Ruben Honik  (to be admitted *pro hac vice*)
David J. Stanoch (to be admitted *pro hac vice*)
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
267-435-1300
ruben@honiklaw.com
david@honiklaw.com

**FRANKEL SYVERSON PLLC**
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (AZ 027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (AZ 020191)
patti@frankelsyverson.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis A. Dickman, M.D., individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **[JURY TRIAL DEMANDED]** |
| New York Life Insurance Company, New York Life Insurance and Annuity Corporation, The Paul Revere Life Insurance Company, and Unum Life Insurance Company, | |
| Defendants. | |

Plaintiff Curtis A. Dickman, M.D., brings this class action on behalf of himself and all others similarly situated against New York Life Insurance Company and New York Life Insurance and Annuity Corporation (collectively "New York Life"), The Paul Revere Life

- 1 -

Insurance Company ("Paul Revere"), and Unum Life Insurance Company ("Unum") (all collectively, the "Defendants").  Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief.

**I.    INTRODUCTION**

1.    This class action arises from the false and deceptive marketing of disability insurance.

2.    Defendants solicit consumers to purchase disability insurance that purportedly pays benefits to eligible insureds to age 65.  But in reality, Defendants do not pay benefits through eligible insureds' 65th birthdays.  Instead, Defendants only pay benefits up to an insured's policy anniversary date.  This means that eligible insureds whose policy anniversaries predate their 65th birthdays are short-changed disability benefits they were promised up until age 65.

3.    Plaintiff is one such insured.  He was promised, applied for, and received a disability insurance policy that promised disability benefits to age 65.  After Plaintiff suffered a disability, Defendants made disability payments under the policy.  However, prior to his 65th birthday in August 2024, Defendant wrongly and unreasonably refused to pay benefits after Plaintiff's policy anniversary date in June 2024.

4.    Plaintiff brings this action for damages and declaratory relief on behalf of all persons who paid for disability insurance policies from Defendants but did not receive benefits through their turning age 65.  Plaintiff alleges (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) a declaration of entitlement to disability benefits for eligible insureds through their 65th birthdays, (iv) reformation, (v) fraudulent inducement, (vi) negligent misrepresentation, (vii) violation of state consumer protection laws, and (viii) insurer bad faith.

**II.    PARTIES**

5.    Plaintiff Curtis A. Dickman, M.D., is and was at all pertinent times a citizen of the state of Arizona.

6.      Defendant New York Life Insurance Company, on information and belief, is incorporated under the laws of New York with its principal place of business in New York, New York.  At all times relevant hereto, New York Life Insurance Company marketed, advertised, wrote, and/or administered disability insurance to or for consumers, either directly or through its wholly-owned and controlled subsidiaries.  Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation are referred to herein as "New York Life."

7.      Defendant New York Life Insurance and Annuity Corporation, on information and belief, is incorporated under the laws of Delaware with its principal place of business in New York, York.  It is a direct, wholly-owned subsidiary of New York Life Insurance Company.  At all relevant times hereto, New York Life Insurance Company marketed, advertised, wrote, and/or administered disability insurance to or for consumers. Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation are referred to herein as "New York Life."

8.      Defendant The Paul Revere Life Insurance Company ("Paul Revere"), on information and belief, is incorporated under the laws of Massachusetts with its principal place of business in Worcester, Massachusetts.  On information and belief, Paul Revere is a wholly-owned subsidiary of Defendant Unum Life Insurance Company.  At all times relevant hereto, Paul Revere marketed, advertised, and/or administered disability insurance to or for consumers.

9.      Defendant Unum Life Insurance Company ("Unum"), on information and belief, is incorporated under the laws of Maine with its principal place of business in Chattanooga, Tennessee.  At all times relevant hereto, Unum marketed, advertised, and/or administered disability insurance to or for consumers.

## III.    JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 2201.  The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate.  There are

more than 100 members of the proposed Class.  Complete diversity exists between Plaintiff (a citizen of Arizona) and at least one Defendant, none of which are incorporated or have its principal place of business in Arizona.

11.    This Court has personal jurisdiction over each Defendant because each Defendant conducts substantial business in this District and in this State through its solicitation, advertising, sale, and administration of insurance products directly to consumers in this State through website and hard-copy promotional materials as well as brokers or agents or other authorized individuals who operate on each Defendant's behalf in this State.  In addition, members of the Class have suffered injury as a result of each Defendant's acts in this District.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.    <u>COMMON ALLEGATIONS</u>

### A. Defendants' Deceptive Marketing of Disability Insurance

13.    New York Life advertises, sells, and provides a variety of insurance products to consumers, including disability insurance.

14.    Paul Revere administers policy benefits on behalf of New York Life, including disability benefits.  Unum owns, operates, and controls Paul Revere.

15.    New York Life has long marketed disability insurance.  As New York Life describes it, disability insurance provides eligible persons a monthly benefit payment in the event of sickness or injury.

16.    New York Life touts the advantages of its disability insurance offerings, such as benefits payments made directly to insureds, and competitive premiums as compared to its competitors.

17.    New York Life promises its long-term disability insurance as being designed to provide financial protection in the event of disability for an extended period of time.

The benefits are designed to last for a period of years, or to cover you to a specific age such as 65 or 70.

18.    Additionally, New York Life promotes its long-term disability insurance to individuals who are certified professionals and primary income generators for their households.  Per New York Life, professionals and high-income wage earners are good candidates for New York Life's individual long-term disability insurance offerings.

19.    New York Life promises its disability insurance offerings will provide cost-effective coverage to age 65, and markets a variety of enhancements or riders to policies which also are marketed as being available up to certain birthday milestones, such as age 65 or older.

20.    New York Life's "premium calculator" also allows individuals to estimate monthly premiums to various ages, such as age 65.

21.    New York Life even offers a glossary stating that an age change is the point at which you are considered to be one year older for insurance premium calculation purposes, and that an age change (e.g., turning 65) is determined based on the birthday for same.

22.    As a further marketing enticement, New York Life stresses how it has honored its commitments since 1845, and will be there for you when needed.

23.    New York Life's disability insurance application further reinforces New York Life's marketing and advertising.  The standardized application form reflects that an individual is seeking, and may be approved for, disability benefits to be paid through a certain term, either for two years, five years, to age 65, to age 67, or for a lifetime.

24.    Yet, once an individual commits to New York Life's disability insurance and begins making premium payments, New York Life and its administration agents, Paul Revere and Unum, pull a bait and switch.

25.    Rather than paying disability benefits as promised by New York Life, Defendants will only pay benefits through an individual's policy anniversary, even if that anniversary is *before* the date by which an individual reaches a certain age, such as age 65.

**B. Plaintiff's Experience**

26.     Plaintiff's experience with Defendants is typical of the latter's deceptive bait-and-switch scheme.

27.     Plaintiff is a neurosurgeon who exclusively practiced neurosurgery in a private practice.  He was his household's primary income earner.

28.     To ensure a steady income for his family in the event he fell injured or suffered injury, Plaintiff searched for disability insurance in 1992.

29.     Among other, Plaintiff communicated with an agent for New York Life, who reinforced the New York Life promotional materials' message of monthly disability benefits through a certain age.

30.     Plaintiff reviewed multiple insurers promotional materials, but gravitated towards New York Life because of its representations and promises of monthly disability benefits through a certain age.  The agent reinforced the New York Life promotional materials' message of monthly disability benefits through a certain age.

31.     In or about May 1992, Plaintiff applied for a premier disability income policy with New York Life.  *See* Exhibit A at 31-35.  The application, which was a standardized form prepared by New York Life, specified the policy would be through a certain term, either for two years, for five years, to age 65, to age 67, or for a lifetime.  Plaintiff selected a benefit term of to age 65.  *Id.*

32.     Neither the New York Life promotional materials, the New York Life application, nor the agent acting on behalf of New York Life suggested the disability benefits would terminate by the policy anniversary date closest to an insured's 65th birthday.

33.     Plaintiff received a premier disability income policy from New York Life with a policy date of June 1, 1992, Policy Number H3215198 (the "Policy").  *See* Ex. A.

34.     The policy cover letter stated the benefits were renewable to age 65, and conditionally renewable after 65.  *See* Ex. A at 1.  The letter also explicitly stated that

Plaintiff's insurance application, in which it was indicated that he would receive benefits to age 65, was part of the policy. *Id.*

35.    The policy's data page also indicated the disability income benefits would be payable up to age 65. *Id.* at 2.

36.    The policy had multiple riders. One rider, the cost of living benefit, provided a living adjustment table based on Plaintiff's age through 65. *Id.* at 23.

37.    Another rider, as to residual disability, provided that monthly income benefits for a residual disability would be paid monthly until Plaintiff reached age 65. *Id.* at 25.

38.    Plaintiff paid all of his monthly premiums on the Policy and renewed the Policy annually.

39.    Plaintiff suffered serious orthopedic and neurological injuries, which as of October 2014 prevented him from working as a neurosurgeon. Unum and Paul Revere, as administrator on behalf of New York Life, accepted Plaintiff's disability claim and began paying disability income benefits under the Policy.

40.    Plaintiff was set to turn age 65 on August 4, 2024.

41.    In February 2024, Unum and Paul Revere wrote Plaintiff to inform him that Defendants would be stopping payment of disability income benefits to Plaintiff under the Policy as of June 1, 2024, the Policy's anniversary date.

42.    In other words, Defendants told Plaintiff that they will not pay him disability income benefits to age 65, but rather would stop paying benefits two months prior to when Plaintiff was going to reach the age of 65.

43.    When the policy anniversary date of June 1, 2024 arrived, Defendants stopped making disability income benefit payments to Plaintiff.

44.    Plaintiff should have received benefits under the Policy at least through his 65th birthday in August 2024, if not to June 1, 2025, the anniversary date of the policy which incorporates his 65th birthday.

45.     Through the Summer and Fall of 2024, Plaintiff attempted to negotiate with Defendants about the latter's cessation of benefit payments.  Defendants refused to reverse their position.

46.     As a result of Defendants' wrongful conduct, Plaintiff has been denied benefits at least totaling approximately $4,229.22 dollars for the time period between June 1, 2024 and August 4, 2024, if not through his next policy anniversary of June 1, 2025 totaling approximately $24,556.70, which is the first policy anniversary during which he actually would be age 65.

V.      **CLASS ALLEGATIONS**

47.     Plaintiff brings this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Defendants on behalf of Plaintiff's own behalf and on behalf of the below classes (collectively referred to as "the Class"), to the extent Class members from these jurisdictions can be grouped together for purposes of class treatment:

The Policyholder Class:  All individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, had an insurance disability benefits policy with Defendants.

The Nonpayment Subclass: All individuals in the United States who, from the beginning of the statutory period through the present, had an insurance disability benefits policy with Defendants, and did not receive payments through their birth date specified as the age term in their policies.

48.     Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendants and their employees, officers, directors, and agents; (c) Defendants' legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

49.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

50.    Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

51.    **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially tens or hundreds of thousands of consumers nationwide.  The Class is therefore so numerous that joinder of all members is impracticable.

52.    **Commonality**:  Common questions of law and fact exist as to all Class members, including but not limited to:

a.    Whether Defendants affirmatively, misleading, deceptively, negligently, and/or unfairly misrepresented the disability income benefits available under their disability insurance policies;

b.    Whether Defendants' disability insurance policies provide for disability income benefit payments through the stated age terms of the policies (e.g., an insured's 65th birthday or 67th birthday);

c.    Whether each Defendant had a duty to disclose material facts or not to omit material facts about the disability insurance policies and benefits payable thereunder;

d.    The materiality of Defendants' nondisclosures and misrepresentations;

e.    Whether the challenged practices harmed Plaintiff and other members of the Class; and

f.    Whether Plaintiff and other members of the Class are entitled to damages, restitution, declaratory relief, and/or equitable relief.

53.    **Typicality**:  Plaintiff's claims are typical of other Class members' claims.  Plaintiff and other Class members all suffered the same type of economic harm.  Plaintiff has substantially the same interest in this matter as all other Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all other Class members.

54. **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation.  Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other Class members.  Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class members they seek to represent.  Plaintiff has no disabling conflicts with other Class members and will fairly and adequately represent the interests of Class members.

55. The elements of Rule 23(b)(2) are met. Defendants have acted on grounds that apply generally to all Class members so that preliminary and/or final declaratory or injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.  Plaintiff and other putative Class members would at least have the full opportunity to consider whether to buy or continue to pay for disability insurance from Defendants had each Defendant fully disclosed all omitted information.

56. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Although many other Class members have claims against Defendants, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Serial adjudication in numerous venues would not be efficient, timely or proper.  Judicial resources would be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs.  Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

# VI.    CAUSES OF ACTION

## Count I – Breach of Contract

57.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members.

58.    Defendants provided a standard form of application to Plaintiff and each other putative Class member, as well as other standardized policy-related materials, which constituted a contract of adhesion.

59.    The applications and other policy-related materials did not vary, or did not substantially vary in pertinent material respects, during the class period.

60.    Plaintiff and each other putative Class member had an agreement with New York Life and its successors, agents, or co-defendants, Paul Revere and Unum, for disability income benefits, as reflected in the standardized applications and other policy-related materials.

61.    Plaintiff's and each other putative Class member's agreement with Defendants provided for disability income benefit payments to be paid by Defendants through the date on which each insured turned a certain age such as age 65, age 67, or for a lifetime.

62.    Defendants materially breached the agreement and related representations by misrepresenting the term of the benefits to be provided, and/or by not paying benefits to each putative Class member's birth date through which they should have received disability income benefit payments.

63.    Plaintiff and each other putative Class member has performed all or substantially all of their obligations under their agreements with Defendants.

64.    Plaintiff and the putative Class are entitled to recover all damages proximately caused by Defendants' breach, including compensatory, incidental, and consequential damages, and pre- and post-judgment interest. Damages may be quantified on a class basis.

**Count II – Breach of Implied Covenant of Good Faith and Fair Dealing**

65.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members.

66.    The agreement between Plaintiff and each putative Class member, and Defendants, imposes upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68.    Defendants have breached the covenant of good faith and fair dealing through their wrongful actions alleged herein.

69.    Plaintiff and each putative Class member has sustained damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

**Count III – Declaratory Judgment – Duty to Pay Benefits**

70.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members.

71.    An actual controversy exists between Plaintiff and each putative Class member, on the one hand, and Defendants, on the other hand, regarding Defendants' obligation to pay monthly disability insurance benefits under the agreements between them.

72.    Each agreement between Plaintiff and putative Class members, and Defendants, provides that disability insurance benefit payments will be made until an insured reaches a certain age.

73.    Defendants refuse to pay benefits until an insured reaches the age specified in each agreement, but rather will pay only until an earlier policy anniversary date, even though the insured has not yet reached the age specified in an agreement.

74.    There is now a bona fide, actual, and present need for a judicial determination of the respective rights and responsibilities.

75.    Plaintiff and other putative Class members are entitled to a declaration that Defendants has an obligation to pay disability income benefits until each insured reaches the age specified (e.g., age 65 or age 67), not an earlier policy anniversary date at which time the insured has not yet reached the specified age.

**Count IV – Reformation**

76.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members, and in the alternative to Count III.

77.    Each agreement between Plaintiff and putative Class members, and Defendants, provides that disability insurance benefit payments will be made until an insured reaches a certain age.

78.    Defendants refuse to pay benefits until an insured reaches the age specified in each agreement, but rather will pay only until an earlier policy anniversary date, even though the insured has not yet reached the age specified in an agreement.

79.    There is now a bona fide, actual, and present need for a judicial determination of the respective rights and responsibilities.  Plaintiff and other putative Class members are entitled to a declaration that Defendants has an obligation to pay disability income benefits until each insured reaches the age specified (e.g., age 65 or age 67), not an earlier policy anniversary date at which time the insured has not yet reached the specified age.

80.    In the alternative to Count III, Plaintiff and other putative Class members are entitled to the equitable reformation of their agreements with Defendants to provide that

Defendants has an obligation to pay disability income benefits until each insured reaches the age specified (e.g., age 65 or age 67), not an earlier policy anniversary date at which time the insured has not yet reached the specified age.

81. Defendants provided a standard form of application to Plaintiff and each other putative Class member, as well as other standardized policy-related materials, which constituted a contract of adhesion.

82. The applications and other policy-related materials did not vary, or did not substantially vary in pertinent material respects, during the class period.

83. Plaintiff and each other putative Class member had an agreement with New York Life and its successors, agents, or co-defendants, Paul Revere and Unum, for disability income benefits, as reflected in the standardized applications and other policy-related materials.

84. Plaintiff's and each other putative Class member's agreement with Defendants provided for disability income benefit payments to be paid by Defendants through the date on which each insured turned a certain age such as age 65, age 67, or for a lifetime.

85. Defendants materially breached the agreement and related representations by misrepresenting the term of the benefits to be provided, and/or by not paying benefits to each putative Class member's birth date through which they should have received disability income benefit payments.

86. Plaintiff and each other putative Class member has performed all or substantially all of their obligations under their agreements with Defendants.

87. Plaintiff and the putative Class are entitled to recover all damages proximately caused by Defendants' breach, including compensatory, incidental, and consequential damages, and pre- and post-judgment interest. Damages may be quantified on a class basis.

**Count V – Fraudulent Inducement**

88.     Plaintiff asserts this claim on behalf of himself and all similarly situated Class members under all states' laws that do not conflict with the applicable law of this claim.

89.     Defendants affirmatively misrepresented material facts about their disability insurance benefits and terms of policies with Plaintiff and other putative Class members, including but not limited to whether payments would be made until each insured reached a certain age (e.g., age 65 or age 67), not some other earlier date.  But this was not the case and was not disclosed.

90.     Defendants omitted material facts including, inter alia, that the disability income benefit payments available under the policies would not run through insureds' birth dates, as represented in the promotional materials and policy-related materials, but would run through some earlier date only.

91.     Defendants made these misrepresentations, or omitted material information, in its promotional materials and representations, and policy-related materials, to Plaintiff and each putative Class member.

92.     Defendants' conduct induced customers to pay premiums for benefits that Defendants had no intention of paying.  Plaintiff and other Class members would not have entered their agreements with Defendants, or would have paid less for the benefits provided, had they known the truth.

93.     Each Defendant knew, was reckless in its disregard for, or should have known of, the true character of the policies and the benefits thereunder.

94.     Each  Defendant  knew  or  reasonably  should  have  known  its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

95.     Each Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and Class members to pay premiums.  To the extent

applicable, each Defendant intended its misrepresentations and omissions to induce Plaintiff and other Class members to pay premiums for disability income benefits.

96.    Each Defendant's misrepresentations and omissions were material. Defendants promised disability income benefits through a certain specified age, but the benefits provided are not as promised and not the same as those represented and bargained for.

97.    Defendants actively concealed their misrepresentations and omissions from Plaintiff and other Class members.

98.    To the extent applicable, Plaintiff and other Class members were reasonably justified in relying on Defendant's misrepresentations and omissions.   The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each Class member at time of purchase through each Defendant's marketing and policy-related materials.   To the extent applicable, reliance may be presumed in these circumstances.

99.    Plaintiff and other Class members were damaged by reason of each Defendant's misrepresentations and omissions.

**Count VI – Negligent Misrepresentation**

100.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members under all states' laws that do not conflict with the applicable law of this claim.

101.    Defendants affirmatively misrepresented material facts about their disability insurance benefits and terms of policies with Plaintiff and other putative Class members, including but not limited to whether payments would be made until each insured reached a certain age (e.g., age 65 or age 67), not some other earlier date.   But this was not the case and was not disclosed.

102.    Defendants omitted material facts including, inter alia, that the disability income benefit payments available under the policies would not run through insureds' birth

dates, as represented in the promotional materials and policy-related materials, but would run through some earlier date only.

103.    Defendants made these misrepresentations, or omitted material information, in its promotional materials and representations, and policy-related materials, to Plaintiff and each putative Class member.

104.    Defendants' conduct induced customers to pay premiums for benefits that Defendants had no intention of paying.  Plaintiff and other Class members would not have entered their agreements with Defendants, or would have paid less for the benefits provided, had they known the truth.

105.    Each Defendant knew, was reckless in its disregard for, or should have known of, the true character of the policies and the benefits thereunder.

106.    Each Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

107.    Each Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and Class members to pay premiums.  To the extent applicable, each Defendant intended its misrepresentations and omissions to induce Plaintiff and other Class members to pay premiums for disability income benefits.

108.    Each Defendant's misrepresentations and omissions were material. Defendants promised disability income benefits through a certain specified age, but the benefits provided are not as promised and not the same as those represented and bargained for.

109.    Defendants actively concealed their misrepresentations and omissions from Plaintiff and other Class members.

110.    To the extent applicable, Plaintiff and other Class members were reasonably justified in relying on Defendant's misrepresentations and omissions.  The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each Class member at time of purchase through each Defendant's marketing and

policy-related materials.  To the extent applicable, reliance may be presumed in these circumstances.

111.    Each Defendant had owed a special duty to Plaintiff and each other Class member on account of the special relationship that existed between each Defendant, as a sophisticated seller, administrator, or provider of insurance products.  On account of each Defendant's superior knowledge and bargaining position, each Defendant had a special duty to disclose the true nature of the disability income benefit payments that would be paid under policies with Plaintiff and other Class members.

112.    Plaintiff and other Class members were damaged by reason of each Defendant's negligent misrepresentations and or omissions.

**Count VI – Violation of Consumer Protection Laws**

113.    Plaintiff asserts this claim on behalf of himself and all similarly situated Class members under Arizona law, as well as all states' laws that do not conflict with Arizona law.

114.    Each Defendant has violated the consumer protection statutes as follows, to the extent they do not conflict with Arizona law:

a.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et seq.;

b.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

c.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, et seq.;

d.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

e.    Defendants violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus.  Prof. Code § 17200, et seq.;

f.  Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;

g.  Defendants violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.

h.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

i.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, et seq.;

j.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, et seq.;

k.  Defendants engaged in unfair competition or unfair or deceptive acts  or practices in violation of D.C. Code § 28-3901, et seq.;

l.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

m.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, et seq.;

n.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, et seq.;

o.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, et seq.;

p.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, et seq.;

q.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, et seq.;

r.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, et seq.;

s.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

t.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, et seq.;

u.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, et seq.;

v.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

w.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, et seq.;

x.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

y.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

z.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, et seq.;

aa.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, et seq.;

bb.   Defendants engaged in unfair competition or unfair or deceptive acts  or practices in violation of Mo. Rev. Stat. § 407.0 10, et seq.;

cc.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

dd.   Defendants engaged in unfair competition or unfair or deceptive acts  or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

ee.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

ff.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, et seq.;

gg.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, et seq.;

hh.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, et seq.;

ii.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.;

jj.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

kk.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq.;

ll.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.

mm.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, et seq.;

nn.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

oo.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

pp.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq.;

qq.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

rr.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

ss.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

tt.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

uu.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

vv.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, et seq.;

ww.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

xx.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

yy.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.;

zz.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.;

aaa.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, et seq.; and

bbb.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, et seq., the applicable statute for the Commonwealth of Puerto Rico.

115.   Each Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

116.   Each Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to each Defendant's conduct concerning the marketing, sale, or administration of insurance. Each Defendant promised disability income benefit payments through a certain specified date (e.g., age 65 or age 67), but the benefits provided are not as promised and not the same as those represented and bargained for.

117.   To the extent applicable, each Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of each Defendant's unfair methods of competition and unfair or deceptive

acts or practices, Plaintiff and other Class members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

118.    Each Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding disability income benefit payments s in the course of each Defendant's business.  Specifically, each Defendant represented Each Defendant promised disability income benefit payments through a certain specified date (e.g., age 65 or age 67), but the benefits provided are not as promised and not the same as those represented and bargained for.  Each Defendant made these misrepresentations, or omitted material information in its communications with or disclosures to Plaintiff and other Class members.

119.    The existence of true nature of the benefits to be paid would have been material to Plaintiffs and other Class members.

120.    Plaintiff and other Class members suffered ascertainable loss and actual damages as a direct and proximate result of each Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other Class members would not have purchased policies, or would have done so on different term,  had they known the truth.

121.    To the extent applicable, pre-suit notice and/or a demand letter was sent to each Defendant prior to the filing of the Complaint.

### Count VIII – Bad Faith

122.    Plaintiff asserts this claim on behalf of himself and all similarly situated members of the Nonpayment Subclass.

123.    Each Defendant has put their own interests above those of Plaintiff and Subclass members and have, in bad faith, failed or refused to perform their obligations under the policies as to disability income benefit payments.

124.    Defendants denied Plaintiff's and other Subclass members' claims in bad faith by, among other things, asserting unduly restrictive or unreasonable interpretations of policy terms, failing to give Plaintiff and other Subclass members interests equal to their

own, not paying disability income benefits in accordance with what reasonable ordinary consumers would expect in the circumstances, and forcing Plaintiff to institute this litigation.

125.    On information and belief, Defendants' bad faith conduct is part of a repeated pattern or practice and is not an isolated occurrence.

126.    As a proximate result of Defendants' bad faith conduct, Plaintiff and other Sublcass members have suffered and will continue to suffer damages, including the amounts improperly withheld and interest on same, and other damages and attorneys' fees and costs in total amounts to be shown at trial.

127.    Each Defendant carried out their bad faith conduct willfully, or with conscious disregard, as to Plaintiff and other Subclass members, and subjected them to undue hardship.   In the alternative, each Defendant's conduct was an intentional misrepresentation, omission, deception, or concealment of a material fact known or knowable to each Defendant with the intention of depriving Plaintiff and other Subclass members of property or legal rights, or by causing them other injury.  Each Defendant's conduct was done with malice, oppression, or fraud, entitling Plaintiff and other Subclass member to punitive damages an amount appropriate to punish or set an example and to deter future misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following judgment:

A.    An order certifying this action as a class action;

B.    An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

C.    A declaration that each Defendant is liable pursuant to each and every one of the above-enumerated causes of action, that the disability insurance policies are void and premiums should be funded, and/or that the policies should be interpreted or reformed in favor of coverage as alleged herein;

1        D.      An order awarding appropriate declaratory, preliminary and/or final

2    injunctive relief against the conduct of each Defendant described herein;

3        E.      Payment to Plaintiff and Class members of all damages, exemplary or

4    punitive damages, restitution and/or disgorgement associated with the conduct for all

5    causes of action in an amount to be proven at trial, including but not limited to the full

6    amounts of premiums paid, the disability income benefit payments owed, and each

7    Defendant's ill-gotten gains;

8        F.      An award of attorneys' fees, expert witness fees, and costs, as provided by

9    applicable law and/or as would be reasonable from any recovery of monies recovered for

10   or benefits bestowed on the Class members;

11       G.      An award of statutory penalties to the extent available;

12       H.      Interest as provided by law, including but not limited to pre-judgment and

13   post-judgment interest as provided by rule or statute; and

14       I.      Such other and further relief as this Court may deem just, equitable, or

15   proper.

16                                   **JURY DEMAND**

17       Plaintiff respectfully requests a trial by jury on all causes of action so triable.

18       DATED:  January 16, 2025.

19                                            **FRANKEL SYVERSON PLLC**
                                              By _____*s/Patricia N. Syverson*_____
20                                            Patricia N. Syverson
                                              9655 Granite Ridge Drive, Suite 200
21                                            San Diego, California 92123

22                                            **FRANKEL SYVERSON PLLC**
                                              Ty D. Frankel
23                                            2375 E. Camelback Road, Suite 600
                                              Phoenix, Arizona 85016
24
                                              Ruben Honik
25                                            David J. Stanoch
                                              **HONIK LLC**
26                                            1515 Market Street, Suite 1100
                                              Philadelphia, PA 19102
27
                                              *Attorneys for Plaintiff*
28
                                         - 25 -