**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis A Dickman, | No. CV-25-00138-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| New York Life Insurance Company, et al., | |
| Defendants. | |

In 1992, Plaintiff Curtis A. Dickman, M.D. ("Plaintiff") applied for a disability income policy (the "Policy") issued by Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation (collectively, "New York Life"). Under the Policy, the benefits were renewable "to age 65."

After suffering injuries that prevented him from working, Plaintiff successfully applied to The Paul Revere Life Insurance Company ("Paul Revere") and Unum Life Insurance Company of America ("Unum"), as administrators on behalf of New York Life, for disability income benefits. However, Paul Revere and Unum later informed Plaintiff that the payments would stop on June 1, 2024, the Policy's anniversary date nearest to his 65th birthday, as opposed to August 4, 2024, his actual 65th birthday.

Plaintiff initiated this putative class action against New York Life, Unum, and Paul Revere (collectively, "Defendants"), raising contract and tort claims. (Doc. 1.) In an order dated October 30, 2025, the Court partially dismissed the complaint and granted Plaintiff leave to amend (the "October 2025 Order"). (Doc. 23.) Plaintiff has now filed a First

Amended Complaint ("FAC") (Doc. 25) and Defendants have again moved to dismiss (Doc. 29). For the reasons that follow, the motion is granted in part and denied in part.

**BACKGROUND**

I.     Relevant Factual Background

The parties are familiar with the facts of this case, which are set out in detail in the October 2025 Order. (Doc. 23.) The Court thus provides the following summary of relevant facts, including new allegations derived from the operative pleading, the FAC. (Doc. 25.)[1]

A.     **The Challenged Conduct**

"Following completion of residency training in neurological surgery, Plaintiff planned to begin new employment in July 1992 with a neurosurgical practice in Phoenix, Arizona." (*Id.* ¶ 29.) That year, Plaintiff "searched for disability insurance." (*Id.* ¶ 28.)

In or around May of 1992, "Plaintiff communicated with New York Life agent Gary F. Bailey in or near Phoenix, Arizona. They discussed Plaintiff's imminent start of new employment, and Plaintiff's desire to obtain disability insurance coverage." (*Id.* ¶ 32.)

Plaintiff "discussed with New York Life's agent how Plaintiff would be eligible for basic disability coverage under a group policy with his new employer. However, because Plaintiff was coming out of residency training, his income history meant the coverage under the group policy would be limited." (*Id.* ¶ 33.)

"New York Life's agent recommended individual disability coverage to supplement Plaintiff's group coverage. New York Life's written materials provided by New York Life's agent to Plaintiff, including a brochure of coverage describing the coverage and the application itself, made clear that monthly disability benefits would be payable through a certain age, such as through Plaintiff's 65th birthday." (*Id.* ¶ 34.) "New York Life's agent reinforced the New York Life written materials' message of monthly disability benefits through a certain age." (*Id.* ¶ 35.)

---

[1]     The new factual allegations, including allegations that have been changed in part, are found in following paragraphs of the FAC: 29, 32-37, 40-45, 51-52, 55-57, 59, and 65. (Doc. 26-1 [redlines].)

Plaintiff "sought disability coverage through his 65th birthday," and "New York Life's agent understood and knew this, and reassured Plaintiff that the individual disability benefits would run concurrently with group disability benefits through Plaintiff's 65th birthday, as reflected on the New York Life written materials such as the application itself and brochure." (*Id.* ¶ 36.) "Based on New York Life's written materials such as the application itself and brochure, the assurances of New York Life agent Gary F. Bailey, and respective omissions from New York Life's written materials and statements [from] New York Life's agent, Plaintiff detrimentally relied on same and elected to apply for New York Life's policy rather than pursuing similarly situated disability insurance coverage with other companies that actually paid disability insurance benefits through one['s] 65th birthday or the policy anniversary following their 65th birthday." (*Id.* ¶ 37.)

In or around May 1992, "Plaintiff applied for a premier disability income policy with New York Life." (*Id.* ¶ 38.) "The application, which was a standardized form prepared by New York Life, specified the policy would be through a certain term, either for two years, for five years, to age 65, to age 67, or for a lifetime. Plaintiff selected a benefit term of to age 65." (*Id.*) "Neither the New York Life promotional materials, the New York Life application, nor the agent acting on behalf of New York Life suggested the disability benefits would terminate by the policy anniversary date closest to an insured's 65th birthday." (*Id.* ¶ 39.) "To the contrary, all written and oral representations by New York Life suggested disability benefits would run concurrently with his group disability benefits, which also was represented by Unum's written materials (e.g., application itself and brochure) and agent to run through Plaintiff's 65th birthday." (*Id.* ¶ 40.) "This feature of the premier disability income policy was material to Plaintiff. [Plaintiff] would not have sought and paid for individual disability benefits that did not run through his 65th birthday and/or that were not concurrent with his group disability benefits, as one of the main points was to ensure adequate benefits collectively under both policies were he to become disabled." (*Id.*) "New York Life knew this by virtue of its agent's interactions with Plaintiff, and in turn its agent's interactions with New York Life's other

underwriting/coverage personnel, including but not limited to Roger Clark, Sara Gilleran, Dottie Clemons, and Rick Evans." (*Id.*)

"New York Life's policy, procedure, and practice is for all of its agents, including at the time Mr. Bailey, to use standardized, New York Life approved forms during the disability insurance policy application process." (*Id.* ¶ 41.) "New York Life's policy, procedure, and practice also required all of New York Life's agents, including at the time Mr. Bailey, to submit to New York Life's underwriting/coverage department a signed statement that the agent asked each new applicant the application coverage questions approved by New York Life exactly as set forth by New York Life itself. Mr. Bailey attested to this in connection with Plaintiff's application." (*Id.* ¶ 42.) Thus, the FAC alleges that "New York Life, by policy, procedure, and practice, is for its own agents to communicate the same uniform messaging with each Class member, including the deceptive and misleading application-related questions asked of each Class member whether they wanted coverage 'to Age 65,' which without more creates the reasonable expectation in a reasonable insured's mind (and, in his own situation, Plaintiff's mind) that coverage would run through one's birth date, not potentially some undisclosed earlier date." (*Id.* ¶ 43.)

"New York Life's materials including the application itself and brochure, as well as the New York Life agent's verbal communications, omitted any mention that 'age' would mean anything other than one's birthday, that 'to age 65' would mean anything other than one's 65th birthday, or that coverage would not be concurrent with Plaintiff's group disability coverage, which ran through Plaintiff's 65th birthday." (*Id.* ¶ 44.)

Plaintiff subsequently "received a premier disability income policy from New York Life with a policy date of June 1, 1992, Policy Number H3215198." (*Id.* ¶ 46.) The Policy cover letter "stated the benefits were renewable to age 65, and conditionally renewable after 65." (*Id.* ¶ 47.)

Plaintiff "does not recall receiving or being able to review a copy of the policy after approval of his application in 1992." (*Id.* ¶ 51.) Moreover, "[t]he claim file maintained by

Defendants New York Life, Unum, and Paul Revere for Plaintiff does not contain any record suggesting a copy of the policy was delivered to Plaintiff after its approval in 1992." (*Id.* ¶ 52.)

After Plaintiff "suffered serious orthopedic and neurological injuries," "Unum and Paul Revere, as administrator on behalf of New York Life, accepted Plaintiff's disability claim and began paying disability income benefits under the Policy." (*Id.* ¶ 54.)

Leading up to and after Plaintiff's injury, "Unum and Paul Revere, on behalf of New York Life, reinforced Plaintiff's reasonable expectations in communications about Plaintiff's disability coverage." (*Id.* ¶ 55.) "For instance, a letter dated January 20, 2015, on Unum letterhead and sent on behalf of New York Life, Unum, and Paul Revere, outlined Plaintiff's coverage under both his group policy and individual disability policy." (*Id.* ¶ 56.) "The letter found that Plaintiff's claim related to his injury was medically supportable. The letter did not specify that benefits for the individual disability policy might terminate at some point prior to Plaintiff's 65th birthday. Rather, it stated the benefit is not payable '[a]fter age 65' without qualification or reference to a bizarre definition of 'age.'" (*Id.* ¶ 57.)

Plaintiff "was set to turn age 65 on August 4, 2024." (*Id.* ¶ 58.) "In February 2024, Unum and Paul Revere, on behalf of New York Life, wrote Plaintiff to inform him that Defendants would be stopping payment of disability income benefits to Plaintiff under the Policy as of June 1, 2024, the Policy's anniversary date." (*Id.* ¶ 59.) "When the policy anniversary date of June 1, 2024 arrived, Defendants stopped making disability income benefit payments to Plaintiff." (*Id.* ¶ 61.)

Plaintiff alleges that he "should have received benefits under the Policy at least through his 65th birthday in August 2024, if not to June 1, 2025, the anniversary date of the policy which incorporates his 65th birthday." (*Id.* ¶ 62.) Plaintiff further alleges that "[t]he manner in which Defendants interpret or define 'age' in Plaintiff's policy is bizarre, contrary to reasonable expectations, and contrary to industry norms or customs." (*Id.* ¶ 65.) "By way of example, Plaintiff's group disability policy, also issued by Defendants, does

not employ the same unusual definition of 'age' as the policy at issue here.  In other words, most disability insurance companies that promise to pay benefits to age 65, pay benefits to insureds' actual 65th birthdays."  (*Id.*)

B.    **The Policy**[2]

The second page of the Policy is entitled "BENEFITS."  (Doc. 25-1 at 4.)  The "PRIMARY PLAN" is described as including the following "BENEFIT TERM": "BENEFITS ARE PAYABLE UP TO AGE 65, OR IF THE DISABILITY BEGINS AT AGE 60, IT WILL PAY UP TO AGE 65 OR 2 YEARS, WHICHEVER IS LONGER." (*Id.*)

The fourth page of the Policy is the "Definitions" section.  (*Id.* at 6.)  The first defined term in the section is "Age," which is defined as follows:

> **Age** Reference to an age in this policy, such as "age 65", means the policy anniversary nearest to the birthday of the Insured on which he or she is that age.  For example, "Guaranteed Renewable to Age 65" means that the policy can be renewed until the policy anniversary which is closest to the Insured's 65th birthday.

(*Id.*)

A later page of the Policy is the "General Provisions" section.  (*Id.* at 14.)  Here, the term "Entire Contract" is defined as follows:

> **Entire Contract** The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application.  Only the Chairman, the President, the Secretary, or one of our Vice Presidents can change the contract, and then only in writing.  No change will be made in the contract unless you agree to it in writing.  No agent is authorized to change this contract.

(*Id.*)

---

[2]    The Policy is attached as Exhibit A to the FAC.  (Doc. 25-1.)  Ordinarily, if a district court considers evidence outside the pleadings when ruling on a motion to dismiss, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  A district court may, however, consider "documents attached to the complaint" in ruling on a motion to dismiss.  *Id.* at 908.  Because the Policy is described in detail in the October 2025 Order, the Court provides only a summary of the relevant provisions here.

- 6 -

Attached to the Policy is a copy of Plaintiff's application, which reflects that Plaintiff selected a "PRIMARY PLAN" benefit term of "To Age 65." (*Id.* at 28.)

II.    Procedural Background

On January 16, 2025, Plaintiff filed initiated this action. (Doc. 1.) The complaint asserted eight causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; (4) reformation; (5) fraudulent inducement; (6) negligent misrepresentation; (7) violation of consumer protection laws; and (8) bad faith.

On March 28, 2025, Defendants moved to dismiss the complaint in its entirety. (Doc. 10.)

On October 30, 2025, the Court partially granted Defendants' motion to dismiss. (Doc. 23.) As for Count One (breach of contract), the Court began by noting that "[t]he term 'Age' under the Policy means one thing—the policy anniversary nearest to the birthday of the insured." (*Id.* at 10.) The Court based this determination on the Policy itself, which defines the term "Age" as "the policy anniversary nearest to the birthday of the insured." (*Id.*) Nevertheless, the Court found that "[t]he absence of ambiguity does not end the analysis, because under the doctrine of reasonable expectation, 'Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations.'" (*Id.* at 11, citation omitted.) The Court noted that "[t]he essential element of the inquiry under the reasonable expectations doctrine is whether the insurer has reason to believe that the insured would not have agreed to the term if they have been aware of its presence in the policy." (*Id.* at 11-12, cleaned up.) After analyzing the *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277 (Ariz. 1987), scenarios, the Court concluded:

> Plaintiff plausibly allege[d] that a reasonable consumer would perceive the advertisements for an insurance policy providing benefits "to age 65" as a promise of benefits that will extend until the insured's 65th birthday. Indeed, the Court cannot fathom how a reasonable consumer could view such an advertisement as offering anything different.

- 7 -

(*Id.* at 14.)  The Court further held that "a reasonable factfinder could also conclude that Defendants' contrary definition of the term 'Age' in the Policy was bizarre, unusual, and unexpected—and, thus, that Defendants had reason to believe Plaintiff would not have agreed to the Policy had he been aware of that definition."  (*Id.* at 16, footnote omitted.) The Court also noted that although Defendants had attempted to raise, for the first time during oral argument, arguments that (1) the breach-of-contract claim in Count One and the reformation claim in Count Four were subject to Rule 9(b) and (2) "the complaint does not properly attribute the conduct underlying Count One to Unum and Paul Revere," those arguments were forfeited.  (*Id.* at 6 n.3, 14 n.7.)

As for Count Two (breach of the implied covenant of good faith and fair dealing) and Count Eight (bad faith), the Court held that "[b]ecause Defendants only sought dismissal of Counts Two and Eight on two narrow grounds—first, redundancy, and second, because the challenged conduct was permissible under the Policy—and neither argument has merit, Counts Two and Eight are not subject to dismissal at this early stage of the case." (*Id.* at 19.)

As for Count Three (declaratory judgment), the Court concluded that the claim was subject to dismissal because it was "not a proper cause of action, at least where, as here, it simply [sought] a declaration concerning some of the merits issues being raised in other causes of action" and also because "a federal court need not entertain a request for declaratory relief where, as here, the requested declaration would not resolve the entire case or controversy."  (*Id.* at 20-21, cleaned up.)

As for Count Four (reformation), the Court held, among other things, that although this was "not a mutual mistake case," "Defendants [had] not met [their] burden" to establish why Count Four was subject to dismissal "with respect to Plaintiff's unilateral mistake theory."  (*Id.* at 22-25.)  The Court also held that Defendants' argument that Count Four should be dismissed "because reformation is a remedy rather than a standalone cause of action" was forfeited because it was raised for the first time during oral argument.  (*Id.* at 22 n.9.)

Finally, as for Count Five (fraudulent inducement), Count Six (negligent misrepresentation), and Count Seven (violation of consumer protection laws), the Court held that all three claims were subject to dismissal because Plaintiff had failed to satisfy the pleading requirements of Rule 9(b).  (*Id.* at 26-30.)  Specifically, the Court held that "[w]ith respect to the 'who,' the complaint repeatably lump[ed] Defendants together, failing to inform each Defendant of the allegations surrounding its specific alleged participation."  (*Id.* at 27.)  The Court further held that the allegations in the complaint "fail[ed] to specify 'what,' exactly, in the promotional materials was misrepresented or the specific content of each alleged misrepresentation," "also fail[ed] to adequately specify 'when' and 'where' the misrepresentations appeared," and failed to "identify which particular promotional materials contained the challenged misrepresentations."  (*Id.* at 28.)

In summary, the October 2025 Order dismissed Counts Three, Five, Six, and Seven but declined to dismiss Counts One, Two, Four, and Eight.  The October 2025 Order also granted Plaintiff limited leave to amend "to rectify the deficiencies identified in this order."  (*Id.* at 31.)

On November 13, 2025, Plaintiff filed the FAC.  (Doc. 25; Doc. 26-1 [redline].)  The FAC asserts seven causes of action: (1) "Breach of Contract: Damages and Determination" (Doc. 25 ¶¶ 76-84);[3] (2) "Breach of Implied Covenant of Good Faith and Fair Dealing" (*id.* ¶¶ 85-89); (3) "Breach of Contract: Reformation" (*id.* ¶¶ 90-105);[4] (4) "Fraudulent Inducement (Against New York Life only)" (*id.* ¶¶ 106-117); (5) "Negligent Misrepresentation (against Defendant New York Life only)" (*id.* ¶¶ 118-130); (6) "Violation of Consumer Protection Laws (against Defendant New York Life only)" (*id.* ¶¶ 131-139);[5] and (7) "Bad Faith" (*id.* ¶¶ 140-145).[6]

---

[3]    The FAC added the phrase "Damages and Determination" to Count One.  (Doc. 26-1 at 14.)

[4]    The FAC added the phrase "Breach of Contract" to Count Three.  (Doc. 26-1 at 16.)

[5]    The FAC added the qualification that Counts Four, Five, and Six are now brought against New York Life only.  (Doc. 26-1 at 18, 19, 21.)

[6]    The FAC no longer asserts a claim for declaratory judgment.

On December 19, 2025, Defendants filed the pending motion to dismiss the FAC. (Doc. 29.)  That motion is now fully briefed.  (Docs. 30, 31.)[7]

**DISCUSSION**

I.     Legal Standard

A.     **Rule 12(b)(6)**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *Id.* at 1144-45 (citation omitted).  However, the court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678-80.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B.     **Rule 9(b)**

As before, neither side disputes that Plaintiff's claims for fraudulent inducement (now Count Four), negligent misrepresentation (now Count Five), and violations of the Arizona Consumer Fraud Act ("ACFA") (now Count Six), are subject to the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *AZG Enter. Inc. v. Honeywell Int'l Inc.*, 2025 WL 2480943, *3 (D. Ariz. 2025) ("Plaintiff's claim for fraud and/or fraudulent inducement may survive, although it is subject to a Rule 9(b) analysis."); *Estrada v. Capella Univ., Inc.*, 2018 WL 1428155, *2 (D. Ariz. 2018) ("Claims for negligent misrepresentation must

---

7      Defendants' request for oral argument is denied because the issues are fully briefed and oral argument will not aid the Court's decisional process.  *See* LRCiv 7.2(f).

meet the particularity requirements of Rule 9(b).") (cleaned up); *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, *6 (D. Ariz. 2017) ("Claims arising under the ACFA pertain to fraud and are thus subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."). *See also Sweeney v. Darricarrere*, 2009 WL 2132696, *12 n.109 (D. Ariz. 2009) ("Although the Ninth Circuit has suggested that negligent misrepresentation may be a non-fraudulent averment, most district courts within the Ninth Circuit have held that a [negligent misrepresentation claim is subject to the] heightened pleading requirements of Rule 9(b).") (cleaned up).

Additionally, Defendants now assert (Doc. 29 at 10), and Plaintiff does not appear to dispute (*see generally* Doc. 30), that Plaintiff's reformation claim (now Count Three) is subject to the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Harper Constr. Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2020 WL 1820124, *10 (S.D. Cal. 2020) ("Defendant contends that Plaintiffs' pleading of reformation should be subject to the heightened standards of Rule 9(b). The Court agrees."); *Foster v. Ocwen Loan Servicing LLC*, 2018 WL 3023297, *5 (D. Ariz. 2018) ("[T]he Court agrees that Plaintiffs' claims for reformation and rescission of the mortgage agreement 'sound in fraud' and are thus subject to Rule 9(b)'s heightened standards.").

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (cleaned up). *See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (under Rule 9(b), the plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-*

*Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). However, "[a] plaintiff in a fraud-by-omission suit faces a slightly more relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner." *In re Banner Health Data Breach Litig.*, 2017 WL 6763548 at *7 (citations omitted).

II.      Preliminary Issues

As a preliminary matter, the Court must address (1) whether Defendants may assert, in their current Rule 12(b)(6) motion, arguments they could have raised in their last Rule 12(b)(6) motion; and (2) whether the FAC exceeds the limited scope of leave to amend granted in the October 2025 Order.

A.      **Rule 12(g)(2)**

Rule 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Meanwhile, Rule 12(h)(2)(B) specifies that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)." Thus, the proper mechanism for a defendant to raise any failure-to-state-a-claim arguments that could have been raised (but were not properly raised) in an initial Rule 12(b)(6) motion to dismiss is to file a Rule 12(c) motion, not another Rule 12(b)(6) motion. *See, e.g., Sivakova v. Am. Honda Motor Co., Inc.*, 2025 WL 2324632, *4 (C.D. Cal. 2025) ("Defendant again asked the Court to adopt its interpretation that when an amended complaint is filed, regardless of the scope of the amendment, a defendant may either assert for the first time or reassert arguments against all material in the amended complaint, not only the amended material. This argument is simply out of step with the practice in this Circuit and around the country."); *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*, 2018 WL 6018504, *18 (S.D. Cal. 2018) ("[W]hen a plaintiff asserts new allegations in an amended complaint, a defendant is free to file a subsequent 12(b)(6) motion raising

arguments, but that only applies to arguments that were previously unavailable.") (cleaned up).

Defendants have not followed that approach here. Defendants' current Rule 12(b)(6) motion raises several of the same arguments that were deemed forfeited in the October 2025 Order, and Defendants also seek to raise a statute-of-limitations argument they could have raised in their first motion to dismiss.

Although Defendants' presentation of these arguments violates the letter of Rule 12(g)(2), the Ninth Circuit has held that this provision should be read "in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). Specifically, "relegating defendants to the three procedural avenues specified in Rule 12(h)(2) [including a motion under Rule 12(c)] can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* Such is the case where the Rule 12(b)(6) motion "do[es] not appear to have been filed for any strategically abusive purpose." *Id.* at 320. Thus, as a matter of "practical wisdom," the Ninth Circuit has specified "that, as a reviewing court, [it] should generally be forgiving of the district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *Id.* at 319. *See also D Stadtler Trust 2015 Trust v. Gorrie*, 2023 WL 2503642, *40 (D. Ariz. 2023) ("[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading. With that said, it is well recognized that a district court may treat an untimely motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings under Rule 12(c). The Ninth Circuit has lauded the practical wisdom of this approach, which promotes efficiency.") (cleaned up); *Lopez v. Dang*, 2022 WL 1567452, *3 (C.D. Cal. 2022), *aff'd*, 2023 WL 2301511 (9th Cir. 2023) ("The Ninth Circuit has adopted a forgiving approach to Rule 12(g), in part because it is designed to avoid repetitive motion practice, delay, and ambush tactics.") (cleaned up); *Cuviello v. City of Vallejo*, 2020 WL 6728796, *5 (E.D. Cal. 2020) ("Though defendants invoke the defense in a new Rule 12(b)(6) motion, as opposed to preserving it as a defense in an answer, or making a Rule

12(c) motion for judgment on the pleadings as Rule 12(h)(2) would allow, the court will not deny the pending motion on that ground."); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1174 (C.D. Cal. 2011) ("Allstate is correct that Defendants' timeliness defense could and should have been raised in their initial motions before Judge Hellerstein . . . [but] [i]f the Court were to evade the merits of Defendants' timeliness defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert the statutes of limitations and repose in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months.  That is not the intended effect of Rule 12(g) . . . .  Rather than further delay this case, the Court invokes the substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved.") (cleaned up).

Accordingly, the Court will not reject any of Defendants' dismissal arguments on the ground that they violate Rule 12(g)(2).

### B.    **Exceeding The Scope Of The Grant Of Leave To Amend**

#### 1.    The Parties' Arguments

Defendants argue that Plaintiff disregarded the October 2025 Order by "not only modif[ying] his allegations as to his fraud-based claims, but also his allegations as to his contract-based claims." (Doc. 29 at 2.)  As an example, Defendants contend that Plaintiff "adds allegations related to (a) his reasonable expectations doctrine theory of breach of contract, and (b) purported unilateral mistake, inequitable conduct, and fraud in support of his new 'breach of contract: reformation' claim." (*Id.* at 12.)  Defendants assert that "[u]nder Rule 12(f), this Court may strike Plaintiff's unauthorized allegations and 'breach of contract: reformation' claim." (*Id.* at 13 n.9.)

In response, Plaintiff argues that "Defendants' 'unauthorized amendment' argument is spurious." (Doc. 30 at 16.)  Plaintiff acknowledges that the Court "did *not* dismiss any

of [his] contract-based claims (except the stand-alone declaratory judgment count)" but contends that "because Defendants' 'forfeited' arguments about Rule 8 overlap with their Rule 9(b) arguments as to the fraud/deception claims, Plaintiff added to the Amended Complaint a few modest allegations further spelling out each Defendant's involvement." (*Id.* at 16-17.)[8]  Plaintiff argues that the FAC "heads-off" Defendants' previously forfeited arguments "by elaborating on how each Defendant played an actionable role for the contract-related claims." (*Id.* at 17.)

In reply, Defendants argue that "Plaintiff concedes that his Amended Complaint 'added' allegations to his contract-based claims, notwithstanding this Court's clear and express admonition." (Doc. 31 at 6.)

### 2.    Analysis

The October 2025 Order stated that "[a]ny changes [in the FAC] shall be limited to attempting to rectify the deficiencies identified in this order." (Doc. 23 at 31.)  And as Plaintiff acknowledges, the Court "did *not* dismiss any of Plaintiffs' contract-based claims (except the stand-alone declaratory judgment count)." (Doc. 30 at 16. *See also* Doc. 23 at 8-25.)  Nevertheless, the FAC adds several allegations in support of Plaintiff's contract-based claims. (*See, e.g.*, Doc. 26-1 ¶¶ 40-45 [adding allegations that address the Court's prior "reasonable expectation" analysis as to Count One]; *id.* at 14 [adding "Damages and Determination" to the Count One heading]; *id.* ¶ 82 [adding allegation that "Paul Revere and Unum jointly administered the policies on behalf of New York Life" to Count One]; *id.* at 16 [adding "Breach of Contract" to the Count Three heading]; *id.* ¶¶ 98, 100-103 [adding several allegations to Count Three].)

On the one hand, although Plaintiff describes these as "modest allegations" designed to head-off Defendants' previously forfeited arguments, they nevertheless exceed the

---

[8]    Plaintiff cites footnote 3 of the October 2025 Order in support of his assertion that Defendants forfeited arguments about Rule 8.  However, that footnote holds that "Defendants asserted for the first time that two of Plaintiff's other claims (the breach of contract claim in Count One, at least in part, and the reformation claim in Count Four) are also *subject to Rule 9(b)*.  *These arguments* are forfeited." (Doc. 23 at 6 n.3, emphasis added.)  Nevertheless, the distinction is inconsequential to the Court's analysis.

limited scope of leave to amend granted in the October 2025 Order. Typically, when a plaintiff attempts to add new factual allegations and claims[9] that exceed the limited scope of leave to amend previously granted, courts strike those new allegations and claims. *See, e.g.*, *Milkcrate Athletics Inc. v. Adidas Am., Inc.*, 2022 WL 18284401, \*4 (C.D. Cal. 2022) ("Despite the disfavored nature of motions to strike under FRCP 12(f), district courts often strike new claims, parties or factual allegations of an amended complaint that are beyond the permissible scope of a court's prior order granting leave to amend.") (cleaned up); *Chandler v. Brennan*, 2021 WL 4503423, \*2 (D. Ariz. 2021) ("It was impermissible for Plaintiff to attempt to add new factual allegations and claims that exceeded the limited scope of leave to amend granted in the February 2021 order. Accordingly, the unauthorized changes discussed above have no force and will be disregarded.") (citations omitted); *Crane v. Yarborough*, 2012 WL 1067965, \*13 n.14 (C.D. Cal. 2012) ("[I]t would be appropriate to strike plaintiff's First Amendment retaliation claim because the addition of such claim which has been raised for the first time in the Second Amended Complaint exceeds the scope of the leave to amend granted in the November 30 Order, plaintiff has not otherwise sought or been afforded leave to add such new claim or theory of liability, and permitting the addition of such claim and requiring defendants to mount a defense thereto at this late juncture would be unfair and prejudicial to defendants."). *See also Lizza v. Deutsche Bank Nat. Trust Co.*, 714 F. App'x 620, 622 (9th Cir. 2017) ("The district court . . . did not abuse its discretion when it struck the Lizza Plaintiffs' Second Amended Complaint for exceeding the scope of amendment permitted in the court's first dismissal order.").

On the other hand, the situation here is unique in that Plaintiff added these new allegations in an attempt to stave off previously forfeited dismissal arguments that Defendants are now being allowed to raise despite violating Rule 12(g)(2). The same efficiency concerns that counseled in favor of overlooking Defendants' violation of Rule

---

[9]    Because it does not alter the Court's analysis, the Court will assume that Plaintiff's alteration of his reformation claim, from strictly "reformation" to "breach of contract: reformation," can be construed as a new claim. (Doc. 26-1 at 16.)

12(g)(2) also counsel in favor of allowing Plaintiff's new factual allegations to stand. This approach will allow both sides to take their best shot, during this round of briefing, at addressing the legal sufficiency of Plaintiff's claims and allegations and avoid the time and expense associated with yet another round of Rule 12 motions.

III.    Defendants' Additional Documents

A.    **The Parties' Arguments**

Defendants' motion attaches three exhibits that, in Defendants' view, are incorporated by reference into the FAC. (Doc. 29 at 4-5 & n.2.)[10] The exhibits are Exhibit One (the "March 26, 2015 Letter") (Doc. 29-1 at 5-12); Exhibit Two (the "February 27, 2017 Letter") (*id.* at 14-15); and Exhibit Three (the "December 11, 2017 Letter") (*id.* at 17-19). Defendants also attach the declaration of Brian Perazone ("Perazone"), a "Director of Benefit Operations for Individual Disability Insurance" at Unum. (*Id.* at 1.) In that declaration, Perazone declares that he has "access to the claim file concerning" Plaintiff's "disability claim under Policy No. H3215198" and that all three exhibits are true and correct copies that are "contained in the claim file related to Plaintiff's disability claim under the Policy." (*Id.* at 2.) Defendants contend these letters demonstrate that "they repeatedly reminded Plaintiff that his benefits would be paid until June 1, 2024, the policy anniversary nearest to his 65th birthday." (Doc. 29 at 4.) Defendants argue that "[b]ecause Plaintiff has alleged the contents of Defendants' claim file, this Court may consider documents contained in that file, including the three letters referenced above, in resolving this Motion." (*Id.* at 5 n.2.) Citing *Moreno v. United States*, 2019 WL 2970837 (C.D. Cal 2019), and *Klees v. Liberty Life Assur. Co. of Bos.*, 110 F. Supp. 3d 978 (C.D. Cal. 2015), Defendants argue that "[d]istrict courts in the Ninth Circuit routinely consider documents from a claim file in ruling on a motion to dismiss, even where such documents are not attached to or explicitly referenced in the complaint." (*Id.*) Defendants argue that "[a]s in *Moreno* and *Kless*, Plaintiff's Complaint expressly references Defendants' claim file and

---

[10]    Although Defendants' motion attaches a fourth exhibit (Exhibit Four, the "February 1, 2024 Letter") (Doc. 29-1 at 21), Defendants have not asked the Court to consider that document.

letters contained therein, and the Plaintiff's claims depend on the 2015 and 2017 letters referenced above because they show that his claims are time-barred." (*Id.*)

In response, Plaintiff argues that Defendants have not satisfied the standard for either judicial notice or incorporation by reference. (Doc. 30 at 9.) As for incorporation by reference, Plaintiff argues that the FAC "does not rely on the three documents cited by Defendants," "does not even mention them," and "further does not rely on or reference the larger 'claims file' from which Defendants contend they pulled these three documents." (*Id.*) Plaintiff argues that just because the FAC "cites a *different* document simply to demonstrate that Unum and Paul Revere acted as New York Life's agents does not give Defendants free-license to cherry-pick three other documents from their 'claims file' . . . for an entirely different, substantive purpose and for the truth of the matter asserted. This is exactly what [*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)] and other Ninth Circuit authority forbids." (*Id.* at 9-10, footnote omitted.) Plaintiff argues that Defendants' cited cases "are inapposite" because the plaintiff in *Moreno* "did not dispute the defendant's request for judicial notice or the timeline of events, whereas here Plaintiff strongly opposes Defendants' request and the disputed facts Defendants wish to infer" and because the defendant in that *Klees* "never raised a statute of limitations defense in its Rule 12 motion; its Rule 12 motion was *denied*; and among the materials referenced were additional letters about termination of the plaintiff's benefits and a denial of an appeal, which Defendants conspicuously omit from its improper request to consider extrinsic documents." (*Id.*, citation omitted.) Plaintiff also argues that, "[m]ore broadly, neither *Moreno* nor *Klees* stand for Defendants' remarkable position that the Court may consider *some* extrinsic documents and draw disputed factual inferences from them in Defendants' favor, while not considering other contrary, yet-to-be produced documents." (*Id.* at 10-11.)

In reply, Defendants first argue that Plaintiff's argument "that [the] letters are not judicially noticeable" is a "red herring" because Defendants "never sought judicial notice of those letters." (Doc. 31 at 3.) As for incorporation by reference, Defendants argue that

"Plaintiff does not (and cannot) dispute the authenticity of the letters. Nor does he dispute that he received the letters. Contrary to Plaintiff's assertion, the [FAC] specifically references and relies upon the 'claim file' that contains the letters." (*Id.*) Defendants also contend that the FAC "references and quotes other letters from that claim file." (*Id.* at 4.) Defendants argue that "[t]his is precisely the situation the incorporation-by-reference doctrine was designed to address." (*Id.*)

### 2. **Analysis**

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Ritchie*, 342 F.3d at 907. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

Here, Defendants only invoke the incorporation-by-reference doctrine. A document may be deemed incorporated by reference into the complaint on two grounds: "if the plaintiff [1] refers extensively to the document or [2] the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted).

The first method, i.e. "refers extensively," is inapplicable here. The FAC nowhere refers to the three letters that Defendants now proffer. To the extent Defendants' argument is that the three documents are incorporated by reference because the FAC expressly references the "claim file" and the three documents are components of the claim file, that argument is without merit. Incorporation-by-refence applies when "the plaintiff refers extensively *to the document*," not to portions of a broader collection of documents. *Khoja*, 899 F.3d at 1002 (emphasis added). *See also Nevarez v. City of Mesa*, 2025 WL 2431799, *4 (D. Ariz. 2025) ("True, some courts outside the Ninth Circuit have held that such an explicit reference is not required for incorporation by reference. But this Court must follow

Ninth Circuit law, and the Ninth Circuit standard is clear that the complaint must refer to the evidence.") (citation omitted).

Turning to whether the three letters "form the basis" of Plaintiff's claims, the Ninth Circuit has held that "if the document merely creates a defense to the well-plead allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002. Such is the case here. Indeed, this case is similar to *Bourban v. AXA Equitable Life Ins. Co.*, 2020 WL 8028847 (C.D. Cal. 2020). There, the plaintiff had "purchased a disability insurance policy" that "[i]n the event of total disability caused by an accident . . . promised benefits for life" and "[i]n the event of total disability from sickness . . . promised benefits only to age 70." *Id.* at *1. The defendant insurer "classified Plaintiff's disability as caused by sickness," thus terminating his benefits when he reached age 70, and the plaintiff sued for breach of contract and breach of the duty of good faith and fair dealing. *Id.* at *1-2. As relevant here, the defendant insurer sought to incorporate by reference "four exhibits attached [to its motion to dismiss] demonstrating that Plaintiff's claims [were] time-barred." *Id.* at *2. Here, similarly, Defendants argue that the three letters form the basis of Plaintiff's claim "because they show that his claims are time-barred." (Doc. 29 at 5 n.2.) But the court in *Bourban* rejected that argument, explaining that although "the [l]etters may be central to creating a defense for Defendant, . . . they are not necessarily central to Plaintiff's claim, which is that Defendant acted purposefully and intentionally to deceive Plaintiff about the benefits under the Policy to which he is entitled." 2020 WL 8028847 at *3. Defendants' argument here fails for the same reasons. Finally, to the extent Defendants seek to rely on *Moreno* and *Klees*, those cases are factually distinguishable and, at any rate, non-precedential.

Accordingly, the Court must decline to consider the March 26, 2015 Letter, the February 27, 2017 Letter, and the December 11, 2017 Letter for purposes of evaluating Defendants' motion to dismiss.

…

…

IV.    <u>Analysis</u>

    A.    **Statute Of Limitations**

        1.    <u>The Parties' Arguments</u>

Defendants argue that "Plaintiff's claims all fail as a matter of law because they are barred by the applicable statutes of limitation." (Doc. 29 at 7.)  Defendants first set out the applicable statute of limitations for each of Plaintiff's claims, arguing that "(1) the ACFA is one year; (2) breach of the implied covenant of good faith and fair dealing, bad faith, and negligent misrepresentation is two years; (3) reformation and fraudulent inducement is three years; and (4) breach of contract is six years." (*Id*, citations and footnote omitted.) Defendants acknowledge that "Arizona has adopted the discovery rule, which means that a cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause of injury." (*Id.*)  But Defendants argue that "Arizona will not apply the discovery rule where the injury or the act causing the injury are 'open and obvious,' and the rule 'does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claim." (*Id.* at 7-8, citation omitted.)  Defendants also argue that a "plaintiff has the burden of establishing that the discovery rule applies to toll the statute of limitations." (*Id.* at 8.)  As for accrual, Defendants argue that "[b]reach of contract and breach of the covenant of good faith and fair dealing claims accrue when a plaintiff knows or in the exercise of reasonable diligence, should know, of the facts underlying their alleged injury" and that "[t]he statutes of limitation for fraud-based claims . . . accrue when a plaintiff knew or through reasonable diligence could have learned of the alleged fraud." (*Id.*)  Defendants argue that because "Plaintiff alleges that he 'received' the policy in 1992, over 32 years before this action was filed," and because "the clear and express terms of the Policy provide that Plaintiff's disability benefits would be paid to the policy anniversary nearest to his 65th birthday," it follows that Plaintiff "knew or should have known of the facts underlying his claims when he 'received' the Policy on June 1, 1992." (*Id.*)  Defendants next argue that "Plaintiff has failed to allege any facts to suggest that any of the statutes of limitation should be tolled

under the discovery rule" and that "even if, despite that failure, the discovery rule were found to apply, Plaintiff's claims would still be time-barred because he knew or should have known of his claims by no later than December 11, 2017." (*Id.* at 9.) Referencing the three letters attached to their motion, Defendants argue that "Plaintiff did not sue until more than seven years later" and that Plaintiff's "disregard[]" of the letters "is a transparent attempt to obscure that his claims are barred by the statute of limitations." (*Id.*)

In response, Plaintiff contends that his "claims are not time-barred." (Doc. 30 at 11.) First, Plaintiff argues that "statute of limitations defenses may not be raised by motion to dismiss unless they include no disputed issues of fact" and that this case includes several disputed issues of fact, including "the date by which a plaintiff's claims accrued, or when and whether a plaintiff knew or should have known of a claim." (*Id.* at 11-12, citation omitted.) Second, Plaintiff argues that Defendants' "argument also fails on the merits." (*Id.* at 12.) Specifically, Plaintiff argues that "[i]t is black-letter law that a claim does not accrue, and a statute of limitations does not begin to run, until all elements are ripe." (*Id.*) Plaintiff asserts that his "contract-based and fraud-based claims require[] [him] to have suffered damage" and that he "did not suffer damage until Defendants stopped paying disability benefits in June 2024, before his 65th birthday in August 2024." (*Id.*) Thus, Plaintiff argues that "[n]one of his claims accrued until then." (*Id.*) Alternatively, Plaintiff argues that he "expressly alleges that Defendants sent their termination letter in February 2024" and that "[t]he original complaint was filed less than one year thereafter." (*Id.* at 13 n.3.) Citing *Nazareth v. Ohio Nat. Life Assur. Corp.*, 2006 WL 224029 (M.D. Fla. 2006), Plaintiff argues that there was no "justiciable controversy unless and until (i) Defendants terminated his benefits prior to his 65th birthday, and (ii) Plaintiff remained disabled at that time. Until then, Plaintiff's claims, like those in *Nazareth*, were 'speculative.'" (*Id.* at 13.) Finally, Plaintiff argues that "even assuming [his] claims accrued prior to his 65th birthday in August 2024," equitable tolling would nevertheless apply. (*Id.* at 13-14.)

In reply, Defendants raise three arguments. First, Defendants argue that Plaintiff's "claims are time-barred under general accrual principles." (Doc. 31 at 2.) Specifically,

Defendants argue that "Plaintiff's claims accrued on June 1, 1992, when he received the Policy . . . because the Policy unambiguously provides that Plaintiff's disability benefits would be paid to the policy anniversary nearest to his 65th birthday," and thus Plaintiff "knew or should have known of the facts underlying his claim" when he received the Policy on that day. (*Id.*)  Defendants also argue that Plaintiff's theory that "he supposedly did not suffer damage until Defendants stopped paying disability benefits in June 2024" is incorrect because "he was damaged as soon as he paid premiums for the Policy, starting in 1992, with access to the unambiguous Policy language that alerted him or should have alerted him to his claims." (*Id.* at 2-3, cleaned up.)  Defendants contend that *Nazareth* "is inapposite" because, among other things, it "does not even address the statute of limitations." (*Id.* at 3 n.3.)  Second, Defendants argue that "even if the discovery rule were found to apply, Plaintiff's claims would still be time-barred because letters from Plaintiff's claim file, which Plaintiff has received, show that he knew or should have known of his claims by no later than December 11, 2017." (*Id.* at 3.)  Third, Defendants argue that "the equitable tolling doctrine does not save Plaintiff's claims." (*Id.* at 4-5.)

2.     Analysis

"Statutes of limitations are substantive in nature, and, therefore, state statutes of limitations appl[y] in diversity cases.  Similarly, tolling provisions are treated as an integral part of a statute of limitations, and district courts must apply whatever tolling provisions are recognized under state law." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 528 (9th Cir. 2011) (cleaned up).  "Further, several courts appear to have decided that accrual was substantive and applied state law to determine accrual for state statute of limitations purposes." *Bergson v. United States*, 2018 WL 2046202, *2 n.1 (W.D. Wash. 2018).

As an initial matter, the Court agrees with Plaintiff that it does not appear from the face of the complaint that his claims are barred under general Arizona accrual principles. Under Arizona law, "a contract action accrues and the statute of limitations begins to run when the breach occurred." *Conlon Grp. Arizona, LLC v. CNL Resort Biltmore Real Est., Inc.*, 2009 WL 2259734, *4 (D. Ariz. 2009).  Similarly, a fraud "cause of action accrues,

and the statute of limitations commences, when one party is able to sue another." *Custom Homes By Via LLC v. Bank of Oklahoma*, 2013 WL 5783400, *3 (D. Ariz. 2013) (cleaned up), *aff'd sub nom.*, 637 F. App'x 356 (9th Cir. 2016). *See also Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. 1994) (holding that a cause of action under ACFA "accrues when 'the plaintiff knows or should have known of both the *what* and *who* elements of causation'").

Defendants argue that under general accrual principles, Plaintiff's claim accrued on June 1, 1992, the day he received the Policy. Plaintiff disagrees, arguing his claim did not accrue until June 1, 2024, the day Defendants terminated his disability benefits. Courts in Arizona, albeit in scenarios not identical to the one at hand, focus on damages, including the actual denial of coverage, to determine when a plaintiff's claims accrued. *See, e.g.*, *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 926 (Ariz. 2024) ("The requisite legal injury to sustain a negligence action entails appreciable, non-speculative harm. Thus, a cause of action for a negligent act does not accrue unless it results in immediate harm.") (cleaned up); *Clark Equip. Co. v. Arizona Prop. & Cas. Ins. Guar. Fund*, 943 P.2d 793, (Ariz. Ct. App. 1997) ("A breach of an insurance contract generally occurs when the insurer denies the insured the relevant coverage. The rationale behind this rule is that the nature and extent of the breach, and the damages flowing from it, can be determined only after a claim has been definitively denied and negotiations between insurer and insured have ceased."); *Gibbons v. Badger Mut. Ins. Co.*, 466 P.2d 36, 41 (Ariz. Ct. App. 1970) ("The action accrued when the company expressly denied coverage in March, 1963."). Likewise, most authority from outside Arizona holds that a cause of action accrues when the insurer actually denies benefits to the insured. *See, e.g.*, *Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 882 (4th Cir. 2015) ("As we have discussed, the statute of limitations on a contract action begins to run from the date of the alleged breach. . . . Given that Curry's cause of action for breach is based on Trustmark's non-payment of benefits owed under the contract, it seems an unremarkable proposition that his action for alleged breach of contract arose when Trustmark stopped paying benefits on June 30, 2008."); *Dees v. Allstate Ins. Co.*, 933

F. Supp. 2d 1299, 1306-07 (W.D. Wash. 2013) ("Ms. Dees' cause of action for bad faith resulting from Allstate's handling of her PIP claim accrued when Allstate denied coverage."); *Akins v. Washington Metro. Area Transit Auth.*, 729 F. Supp. 903, 905 (D.D.C. 1990) ("Akins filed suit within three years of the 1986 termination of benefits but not within three years of the 1984 notification by Mutual of its intention to terminate benefits in two years. . . . Akins might have overcome his disability within the two years. His doctors might have discovered a physical disability arising from the stabbing or some intervening cause. He might have died. Meanwhile, Mutual was paying out under the contract. A divergence between Akins' interpretation of the contract—i.e. that he was entitled to payment until age 65—and Mutual's performance was only conjectural until January 1986 when Mutual ceased payment. That is when the breach occurred. Plaintiffs should not be encouraged by judicial decisions to sue whenever a breach becomes a mere possibility. Thus Akins' complaint was timely filed, and the Court proceeds to consider the merits of Akins' claim against Mutual."); *Curran v. Time Ins. Co.*, 644 F. Supp. 967, 974 (D. Del. 1986) ("A cause of action cannot accrue until the plaintiff has incurred some harm or injury and has a right to sue for recovery. . . . The potential right to receive payments under the extended benefits provision did not accrue until the Time policy was terminated on July 1, 1980."). Accordingly, under general accrual principles, Plaintiff's claims did not accrue until June 1, 2024, the day Defendants terminated his coverage. Plaintiff filed suit on January 16, 2025 (Doc. 1) and the shortest statute of limitations identified by Defendants is one year (Doc. 29 at 7). As such, Plaintiff's claims are not barred by general accrual principles.

Moreover, even if Plaintiff's claims had accrued in 1992 under general accrual principles, Plaintiff has pleaded sufficient facts to invoke the discovery rule. In Arizona, the discovery rule tolls the statute of limitations "until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995). The FAC alleges that "[i]n or about May 1992, Plaintiff applied for a premier disability income policy with

New York Life." (Doc. 25 ¶ 38.) The FAC goes on to allege that "[n]either the New York Life promotional materials, the New York Life application, nor the agent acting on behalf of New York life suggested the disability benefits would terminate by the policy anniversary date closest to an insured's 65th birthday." (*Id.* ¶ 39.) The FAC then alleges that although Plaintiff was issued the Policy as of June 1, 1992 (*id.* ¶ 46), he "does not recall receiving or being able to review a copy of the policy after approval of his application in 1992" (*id.* ¶ 51). Rather, the FAC appears to allege that the first time Plaintiff became subjectively aware that his benefits would terminate before his 65th birthday was in February 2024, when "Unum and Paul Revere, on behalf of New York Life, wrote Plaintiff to inform him that Defendants would be stopping payment of disability income benefits to Plaintiff under the Policy as of June 1, 2024, the Policy's anniversary date." (*Id.* ¶ 59). Given this backdrop, and in light of the principle that "the issue of whether the discovery rule tolls the limitations period generally is a fact-intensive inquiry to be resolved by the trier of fact," *C. R. Bard, Inc. v. Atrium Med. Corp.*, 2022 WL 1136634, *6 (D. Ariz. 2022) (citing *Gust*, 898 P.2d at 969), Plaintiff has done enough at this early stage of the case to show that the earliest he knew, or with reasonable diligence should have known, the facts underlying his causes of action was February 2024—which, again, was less than one year before he filed his complaint. And to the extent Defendants seek to rely on the three letters attached to their motion in support of their argument that "Plaintiff's claims would still be time-barred because he knew or should have known of his claims by no later than December 11, 2017" (Doc. 29 at 9), those letters are not properly before the Court for the reasons stated in earlier portions of this order.

Accordingly, Defendants have not established that Plaintiff's claims are subject to dismissal on statute-of-limitations grounds.[11]

…

…

---

[11] Given these determinations, it is unnecessary to address the parties' arguments regarding equitable tolling.

- 26 -

B.    **Rule 9(b)**

1.    The Parties' Arguments

Defendants argue that the FAC "fails to cure the deficiencies that previously led this Court to dismiss [Plaintiff's] fraud-based claims" and that "Plaintiff's restyled reformation claim, which also sounds in fraud or mistake, suffers from the same deficiencies." (Doc. 29 at 10, footnote omitted.) Defendants contend that the October 2025 Order "made clear that Plaintiff failed to satisfy Rule 9(b) with respect to [his fraud-based] claims because Plaintiff failed to identify the 'who, what, where, and when,' of the alleged fraudulent conduct" and that "[a]ttempting to rectify these deficiencies, Plaintiff's Amended Complaint now asserts his fraud-based claims only against New York Life. Despite those amendments, however, Plaintiff still does not satisfy Rule 9(b)." (*Id.*) Defendants also note that "Plaintiff's reformation claim remains asserted against all Defendants." (*Id.* at 10 n.7.) Defendants next argue that the FAC "is devoid of any particular facts regarding the timing of the alleged misrepresentations and omissions by New York Life." (*Id.* at 10-11.) Defendants also argue that "despite Plaintiff's claim that oral misrepresentations were made, Plaintiff has failed to quote such misrepresentations, to identify when they were made, or to identify by whom they were allegedly made." (*Id.* at 11.) Defendants contend that "Plaintiff's general recount of names of New York Life agents and employees is insufficient to attribute any misrepresentation or omission to any of them, nor does it give New York Life adequate notice of the substance of the allegedly false statements." (*Id.*) Defendants also note that Plaintiff "has not reproduced or quoted any specific promotional materials, brochures, or other documents containing the purported misrepresentations that form the basis of his claims." (*Id.*) Defendants argue that *James Erickson Fam. P'ship LLLP v. Transamerica Life Ins. Co.*, 2019 WL 1755858 (D. Ariz. 2019), is "instructive" because "[l]ike the plaintiff in *James Erickson*, Plaintiff here generally asserts, without quoting any written material, that New York Life's 'written materials' and 'brochure' stated that monthly disability benefits would be paid through a certain age." (*Id.*) Defendants argue that "this statement does not even constitute a misrepresentation, as

Plaintiff *was* paid benefits through a certain age—his age at the policy anniversary nearest to his 65th birthday" and thus Plaintiff "fails to allege what was false or misleading about this statement, which is required to meet Rule 9(b)'s particularity standard." (*Id.* at 11-12.) Defendants contend that "this purported statement is not a direct quote from any material" and that "[a]side from this vague statement, there is no description of the substance of New York Life's supposed misrepresentations" and thus "it is not particular enough to satisfy Rule 9(b)'s requirement to identify 'what' of the alleged misrepresentation." (*Id.* at 12.) Finally, as for Plaintiff's reformation claim, Defendants argue that "Plaintiff alleges no facts to support the purported fraud or how a mistake was made by any defendant, what the mistake was, or when the alleged mistake was made." (*Id.*)

In response, Plaintiff clarifies that his "fraud/deception based claims" are now brought "against New York Life only" and argues that the FAC "amplifies [his] prior allegations for Rule 9(b) purposes." (Doc. 30 at 14.) Specifically, Plaintiff argues that the FAC "alleges that in 'May 1992' (the 'when'), 'Plaintiff communicated with New York Life agent Gary F. Bailey in or near Phoenix, Arizona' (the 'who' and 'where')." (*Id.*) Next, Plaintiff cites several passages from the FAC and argues that "[a]ll of this is the 'what' and 'why' Plaintiff communicated with New York Life about the individual disability coverage at issue in this case, and why he reasonably believed he was getting coverage that ran through age 65." (*Id.* at 14-15.) Plaintiff argues that although Defendants "attempt to fault Plaintiff for not 'quoting any written material,'" that argument "misses the mark" because "Rule 9(b) 'does not require absolute particularity or a recital of the evidence.'" (*Id.* at 15, citation omitted.) Plaintiff goes on to argue that the FAC "lays out sufficient, plausible factual support for his claims." (*Id.*) Specifically, "Plaintiff reasonably believed he was getting individual disability coverage through age 65 because it was supposed to run concurrently with his group disability coverage that ran through 65, and New York Life's personnel—whom the [FAC] even identifies by name—knew this and assured Plaintiff the coverage would be concurrent. Defendants' written materials, including the brochure and application Plaintiff reviewed with New York Life's agent,

- 28 -

reinforced this and did not suggest a different meaning for 'to age 65.'" (*Id.*)  Plaintiff further contends that "[i]t is not fatal that [he] no longer has, and therefore cannot attach, the brochure" because Rule 9(b) does not require "a verbatim recitation" and "[t]he brochure would be in Defendants' exclusive possession, which will be revealed through discovery." (*Id.* at 16 n.4.)  Plaintiff also argues that the Rule 9(b) standard is relaxed "where, as here, the claims involve fraud by omission." (*Id.* at 16.)  Finally, Plaintiff argues that *James Erickson* "is distinguishable because not only did that plaintiff fail to allege any oral communications or describe them, but he wholly failed to allege when or where any misrepresentations were made, why they were misleading, or what information was omitted." (*Id.*)

In reply, Defendants argue that Plaintiff's response "identifies only one alleged misrepresentation," which appears in paragraph 36 of the FAC, but "paragraph 36 does not identify Mr. Bailey, nor does it state when, where, or how this purported representation was allegedly made, such as in-person, over a telephone call, or by other means." (Doc. 31 at 5, footnote omitted.)  Defendants also argue that "Plaintiff's alleged oral misrepresentation is expressly premised on a 'brochure' and 'Application'" but "[Plaintiff] does not reproduce or quote the referenced 'brochure,' and Plaintiff admits that the 'application' is part of the Policy which expressly and unambiguously defines 'Age.'" (*Id.* at 5-6.)  Defendants contend that "[p]aragraph 36, thus, does not satisfy Rule 9(b), and Plaintiff's Opposition does not even identify any other alleged misrepresentations, much less point to allegations providing the details Rule 9(b) requires as to such purported misrepresentations." (*Id.* at 6, footnote omitted.)  Finally, Defendants argue that "[c]ontrary to Plaintiff's assertion, *James Erickson* is instructive here." (*Id.* at 6 n.7.)

## 2.    Analysis

As noted, neither party disputes that Plaintiff's fraudulent inducement, negligent misrepresentation, ACFA, and reformation claims are subject to Rule 9(b).[12]  Rule 9(b)

---

[12]    Defendants' reply asserts that "Plaintiff does not dispute that his *contract-based* claims are subject to the particularity requirement of Rule 9(b) . . . because those claims are premised on allegations of fraud and/or mistake." (Doc. 31 at 6 n.8.)  But Defendants' motion argues that "Plaintiff's fraudulent inducement, negligent misrepresentation, ACFA,

requires that the circumstances constituting fraud be stated with particularity. *See also Van Go LLC v. Potts*, 2016 WL 4974968, *3 (D. Ariz. 2016) ("Where a plaintiff alleges fraud or misrepresentation, Rule 9(b) imposes heightened pleading requirements. While malice, intent, knowledge, and other conditions of mind may be alleged generally, the circumstances constituting fraud must be pled with particularity."). A plaintiff must "set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (cleaned up).

### a.    Fraudulent Inducement, Negligent Misrepresentation, ACFA

Although the October 2025 Order held that the complaint failed to satisfy the heightened pleading requirement of Rule 9(b) as to Plaintiff's fraudulent inducement, negligent misrepresentation, and ACFA claims (Doc. 23 at 27-31), the FAC has remedied that deficiency and successfully pleaded the who, what, when, where, and how of the alleged fraud.

With respect to "who," the October 2025 Order highlighted that "the complaint repeatedly lump[ed] Defendants together, failing to inform each Defendant of the allegations surrounding its specific alleged participation." (*Id.* at 27.) The FAC, in contrast, now asserts the fraudulent inducement, negligent misrepresentation, and ACFA claims only against New York Life. (Doc. 25 ¶¶ 106-139.) Nevertheless, Defendants argue that the FAC still fails "to identify by whom [the misrepresentations] were allegedly made." (Doc. 29 at 11.) The Court disagrees. Although Defendants are correct that the FAC must allege "who said what . . . and to whom," *Derry v. Am. Brokers Conduit*, 2010 WL 432340, *2 (D. Ariz. 2010), the FAC sufficiently does so. Paragraph 32 of the FAC alleges that "[i]n or about May 1992, Plaintiff communicated with New York Life agent Gary F. Bailey in or near Phoenix, Arizona." (Doc. 25 ¶ 32.) The FAC then goes on to allege several misrepresentations, addressed below, made by Bailey. Thus, the FAC not

---

*and reformation* claims should be dismissed with prejudice for failing to satisfy Rule 9(b)." (Doc. 29 at 12, emphasis added.) Defendants' motion does not, in contrast, argue that Plaintiff's remaining contract-based claims are subject to Rule 9(b).

only identifies the "who" (New York Life agent Bailey), but also the "when" (in or about May 1992) and the "where" (in or near Phoenix, Arizona).

As to the "what" and "how," the FAC alleges that "New York Life's agent recommended individual disability coverage to supplement Plaintiff's group coverage. New York Life's written materials provided by New York Life's agent to Plaintiff, including a brochure of coverage describing the coverage and the application itself, made clear that monthly disability benefits would be payable through a certain age, such as through Plaintiff's 65th birthday." (*Id.* ¶ 34.) The FAC goes on to allege that "New York Life's agent . . . reassured Plaintiff that the individual disability benefits would run concurrently with group disability benefits through Plaintiff's 65th birthday, as reflected on the New York Life written materials such as the application itself and brochure." (*Id.*¶ 36.) The FAC also alleges that "New York Life's materials including the application itself and brochure, as well as the New York Life agent's verbal communications, omitted any mention that 'age' would mean anything other than one's birthday, that 'to age 65' would mean anything other than one's 65th birthday, or that coverage would not be concurrent with Plaintiff's group disability coverage, which ran through Plaintiff's 65th birthday." (*Id.* ¶ 44.) In other words, the FAC alleges that New York Life's agent Bailey, through verbal communications and the provision of specific written materials, including the application and brochure, led Plaintiff to believe the benefits under the Policy would run to his 65th birthday by assuring him as much, omitting indications to the contrary, and leading Plaintiff to believe his individual insurance would run concurrently with his group disability coverage. These allegations are sufficient to satisfy the "what" and "how" requirements. Although Defendants argue that paragraph 36 "does not identify Mr. Bailey, nor does it state when, where, or how this purported representation was allegedly made" (Doc. 31 at 5), paragraph 32 indicates that the misrepresentations were made by Bailey, in or about May 1992, in or near Phoenix, Arizona, and Plaintiff was not required to repeat as much in every paragraph of the FAC.

Defendants also appear to seek to impose an even more stringent standard than what Rule 9(b) requires, arguing that "despite Plaintiff's claim that oral misrepresentations were made, Plaintiff has failed to quote such misrepresentations" and that "Plaintiff also has not reproduced or quoted any specific promotional materials, brochures, or other documents containing the purported misrepresentations that form the basis of his claims." (Doc. 29 at 11.) To the extent Defendants argue that "Rule 9(b) requires a complaint to quote the alleged misrepresentation verbatim or attach the document in which the representation was made, that argument is without merit." *Contractor Mgmt. Servs. LLC v. Para Inc., et al.*, 2026 WL 1882777, *10 (D. Ariz. 2026) (collecting cases).[13]

*James Erickson* does not compel a different outcome. In that case, the plaintiff "did not provide any allegations regarding when or where Transamerica made its misrepresentations" and failed to allege "what exactly was misleading about the various materials" and "how" they "were inaccurate." 2019 WL 1755858 at *4. In contrast, and as detailed above, the FAC has provided sufficient allegations to satisfy the when, where, what, and how requirements of Rule 9(b) as to Plaintiff's fraudulent inducement, negligent misrepresentation, and ACFA claims.

### b. **Reformation**

As for Plaintiff's reformation claim, Defendants argue that Plaintiff "adds vague assertions of fraud and that both a unilateral and mutual mistake were made." (Doc. 29 at 12.) Defendants further argue that "Plaintiff alleges no facts to support the purported fraud or how a mistake was made by any defendant, what the mistake was, or when the alleged mistake was made." (*Id.*)

---

[13] The Court notes that although Plaintiff was not required to attach the document in which the challenged representations were made, Plaintiff did attach a copy of the "Disability Income Insurance Application" (Doc. 25-1 at 27-32), which appears as the last 6 pages of the Policy, and which Plaintiff alleges did not indicate that "disability benefits would terminate by the policy anniversary date closest to an insured's 65th birthday" (Doc. 25 ¶ 39). Although Defendants argue that "Plaintiff admits that the 'application' is part of the Policy, which expressly and unambiguously defines 'Age'" (Doc. 31 at 6-7), construing the FAC in the light most favorable to Plaintiff, it is possible that, while the application may be part of the Policy, it does not necessarily follow that the Policy, which defines the term "Age," was part of the application.

Plaintiff's brief fails to meaningfully respond to these arguments. However, Plaintiff does assert "[t]hat New York Life's agent, Mr. Bailey, understood the purpose of the individual disability coverage was to supplement and run concurrently with the group disability coverage fairly supports a case of mutual mistake, as well as unilateral mistake, for purposes of the reformation claim." (Doc. 30 at 16 n.5.)

Unfortunately, the parties' arguments regarding the reformation claim are quite limited, making it difficult to ascertain what they intended to convey. At any rate, to the extent Plaintiff's reformation claim against New York Life is still based on a unilateral mistake theory, it remains permissible for the reasons stated in the October 2025 Order. (Doc. 23 at 24-25.) As noted there, a unilateral mistake is "one where *only one party* to an agreement is mistaken as to the subject matter or the agreement's expression." *Connelly v. Connelly*, 2016 WL 7156437, *3 (Ariz. Ct. App. 2016) (emphasis added). Thus, Plaintiff, on a theory of unilateral mistake, is not required to demonstrate "a mistake was made by any defendant" as Defendants appear to argue. (Doc. 29 at 12.)

True, to grant reformation based on a unilateral mistake, "there must be fraud or inequitable conduct by the other party." *Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981). But as discussed in the preceding section of this order, Plaintiff has now sufficiently pleaded a fraud-based claim under Rule 9(b) against New York Life. It would seem to follow that Plaintiff's reformation claim against New York Life premised on a theory of unilateral mistake is also sufficient under Rule 9(b), and Defendants have not offered any developed argument to the contrary.

However, to the extent Plaintiff is once again attempting to assert a reformation claim against New York Life under a theory of mutual mistake, "[w]hatever this case may be, it is not a mutual mistake case." (Doc. 23 at 23.)

Finally, as discussed in Part IV.C below, to the extent Plaintiff also intended to assert the reformation claim against Unum and Paul Revere, it fails—the only proper defendant as to that claim is New York Life.

…

- 33 -

C. **Contract-Based Claims**

1. The Parties' Arguments

Defendants argue that Plaintiff's contract-based claims—which they identify as Counts One, Two, Three, and Seven of the FAC—fail against Unum and Paul Revere as well as against New York Life. (Doc. 29 at 6, 13-17.) As for Unum and Paul Revere, Defendants argue that the contract-based claims "fail as a matter of law for two independent reasons." (*Id.* at 13.) First, Defendants argue that "Unum and Paul Revere are *not* parties to the Policy" and it is "axiomatic that non-parties cannot be held liable for breach of contract." (*Id.*, cleaned up.) Specifically, Defendants contend that "Plaintiff and New York Life were the only parties to the Policy" and because "[n]either Unum nor Paul Revere are even mentioned in the Policy," "Plaintiff's contract-based claims against Unum and Paul Revere should be dismissed." (*Id.*) Defendants argue that "[t]he fact that Unum and Paul Revere may have administered the Policy or adjusted Plaintiff's claim 'on behalf of New York Life,' does not make them parties to the Policy for the purposes of contract-based claims. (*Id.* at 14.) Second, Defendants argue that "Plaintiff's contract-based claims against Unum and Paul Revere also fail because the [FAC] does not plausibly and particularly allege facts to justify application of the reasonable expectations doctrine as to those entities." (*Id.* at 14-16.) As for New York Life, Defendants argue that "Plaintiff's contract-based claims only survived dismissal due to the reasonable expectations doctrine," but "'[u]nder Arizona law, a policyholder states a claim under the "reasonable expectations" doctrine *only* when the policy language is unclear, ambiguous, and objectively unreasonable; the exclusion is lengthy, confusing, complex, or buried in the policy.'" (*Id.* at 16, quoting *Squire Motor Inns Inc. v. Fireman's Fund Ins. Co.*, 2022 WL 1320412 (D. Ariz. 2022).) Defendants argue that "[h]ere, this Court already has found that the Policy's definition of 'Age' (a) is . . . clear and unambiguous, (b) is not buried in the policy, . . . and (c) did not 'dramatically or oppressively alter the scope of coverage,' but would instead *increase* coverage for many insureds." (*Id.* at 17.) Defendants also argue that "[u]nder the Policy, Plaintiff had ten days to review the Policy and return it for a full

refund if it did not meet his expectations" and "did not avail himself of that right." (*Id.*) Finally, Defendants argue that they "are not aware of any Arizona decision, at any stage, applying the reasonable expectations doctrine under such circumstances" and that, "[t]o the contrary, Arizona courts reject that doctrine and dismiss . . . contract-based claims under those circumstances." (*Id.*)

In response, Plaintiff argues that the FAC "elaborate[es] on how each Defendant played an actionable role for the contract-related claims." (Doc. 30 at 17.) As for Unum and Paul Revere, Plaintiff argues that they "'jointly administered' the Policy on behalf of New York Life, Paul Revere issued benefit checks to Plaintiff, Paul Revere and Unum made the ultimate decision on behalf of New York Life to cut-off Plaintiff's benefits prematurely, and the standardized insurance application was an Unum form on behalf of New York Life." (*Id.*) Plaintiff then argues that "[b]reach of contract claims against an insurer as well as its agents and administrators, such as Paul Revere and Unum, are commonplace." (*Id.* at 17 n.6.) Plaintiff argues that "[a]t a minimum, whether Paul Revere and Unum were acting as agents on behalf of New York Life is a fact question." (*Id.*) Plaintiff also argues that "Defendants' cases are distinguishable because they involved claims against individuals such as adjusters as opposed to administrators acting as agents that made the actual, breaching coverage decisions such as those made by Paul Revere and Unum here" and that "Plaintiff also alleges distinct acts by each Defendant." (*Id.*) As for New York Life, Plaintiff argues that Defendants "rehash their same flawed argument seeking dismissal of the contract-based claims against New York Life" and that "Defendants do not present any reason why this Court should depart from its prior ruling, which is the law of the case." (*Id.* at 18.) Plaintiff also argues that "whether a breach of contract claim satisfies the reasonable expectations doctrine is a question of fact." (*Id.*)

In reply, Defendants first argue that "Unum and Paul Revere were *not* parties to the only contract alleged in the [FAC]." (Doc. 31 at 7.) Defendants contend that "Plaintiff does not dispute that the general rule under Arizona law is that non-parties cannot be liable for breach of contract or breach of the implied covenant of good faith and fair dealing. Nor

- 35 -

does Plaintiff dispute that Unum and Paul Revere are not parties to—or even mentioned in—the Policy." (*Id.*) As for Plaintiff's argument that Unum and Paul Revere "can be liable in contract because . . . they 'jointly administered' the Policy," Defendants argue that "is incorrect" and that "Arizona courts have repeatedly dismissed contract-based claims in such circumstances." (*Id.*) As for Plaintiff's argument that Defendants' cases do not involve administrators acting as agents, Defendants argue that is "wrong and irrelevant" because those cases "do not hinge on whether the defendant in question was an individual or an entity or whether the defendant was an administrator or an adjuster" but rather "hinge on whether the defendant was a party to the policy." (*Id.*) Defendants also argue that "[d]ismissal would be proper even if Plaintiff could adequately allege that Unum and Paul Revere acted as agents of New York Life." (*Id.* at 8.) As for Plaintiff's argument that the insurance application was on Unum letterhead or was an Unum form, Defendants argue "[t]hat assertion is blatantly false." (*Id.*) Defendants also reiterate their argument that "Plaintiff's contract-based claims against Unum and Paul Revere . . . fail because Plaintiff does not . . . allege facts to justify application of the reasonable expectations doctrine *to those entities*." (*Id.* at 8-9.) Turning to New York Life, Defendants argue that Plaintiff "fails to plausibly and particularly allege facts to justify applying the reasonable expectations doctrine to *New York Life*." (*Id.* at 9.) As for Plaintiff's argument that the reasonable expectations doctrine is a question of fact, Defendants argue "[t]hat is incorrect." (*Id.* at 10.) As for Plaintiff's argument that the Court's prior ruling is law of the case, Defendants again argue "[t]hat is incorrect." (*Id.*) And as for the two cases cited by Plaintiff, Defendants argue that "[n]either case supports Plaintiff's claims." (*Id.* at 11-12.)

        2.      <u>Analysis</u>

        a.      **Unum And Paul Revere**

Under Arizona law, "a defendant must be a party to the contract at issue for a breach of contract claim to survive a failure to state a claim defense." *Dickson v. Travelers Cas. Ins. Co. of Am.*, 2024 WL 3595618, \*3 (D. Ariz. 2024). "Generally, Arizona courts will

not recognize a duty of good faith and fair dealing in the absence of a contractual relationship." *Rinehart v. Gov't Emps. Ins. Co.*, 2019 WL 6715190, *3 (D. Ariz. 2019).

Defendants argue, and Plaintiff does not dispute, that "Unum and Paul Revere were not parties to the Policy—the only contract alleged in the [FAC]." (Doc. 29 at 13. *See also* Doc 25-1.)   Rather, the FAC alleges that Unum and Paul Revere were merely "administrator[s] on behalf of New York Life." (Doc. 25 ¶ 54.)   Courts in Arizona routinely hold that third-party administrators and/or adjusters to an insurance policy cannot be liable for breach of contract, or for breaching the covenant of good faith and fair dealing, where the third-party administrators are not parties to the underlying insurance contract. *See, e.g.*, *Hendrix Wholesale Supply LLC v. Accredited Sur. & Cas. Co. Inc.*, 2026 WL 1190918, *2 (D. Ariz. 2026) ("[A] third-party administrator cannot be directly liable for breaching the covenant of good faith and fair dealing because it is not a party to the insurance contract from which that covenant derives.") (cleaned up); *Dickson*, 2024 WL 3595618 at *3 ("Plaintiff has not alleged that Defendant Brown is a party to the policy. Plaintiff only alleges that she is 'an authorized agent, employee and/or representative of Travelers who, at all material times, was responsible for the handling of Williams's insurance claim.'. . . Thus, because Plaintiff has not alleged that a contract existed between Defendant Brown and Plaintiff, the Court must dismiss Plaintiff's claim for breach of contract against Defendant Brown for failure to state a claim under Rule 12(b)(6)."); *id.* at *4 ("Defendant Brown is an insurance adjuster for Defendant Travelers, therefore, she cannot be directly liable for breaching the covenant of good faith and fair dealing because she is not a party to the insurance contract from which that covenant derives.") (cleaned up); *McGhee v. Sedgwick Claims Mgmt. Servs. Inc.*, 2019 WL 1598032, *2 (D. Ariz. 2019) ("[Plaintiff] has brought a bad faith claim against Defendant, which is NHIC's third-party claims administrator.  Although the manner in which Defendant administered Plaintiff's claim may be imputed to NHIC for purposes of a bad faith claim *against NHIC*, Defendant cannot be directly liable for breaching the covenant of good faith and fair dealing because it is not a party to the insurance contract from which that covenant derives."); *Ndwiga v.*

*Plaza Ins. Co.*, 2020 WL 7016448, *4 (D. Ariz. 2020) ("A third-party claim administrator, or a claim adjuster, cannot be directly liable for a breach of the duty of good faith and fair dealing toward an insured without a contractual relationship with the insured although the actions of the agent or administrator will be imputed to the insurer for purposes of a bad faith claim."); *Centeno v. Am. Liberty Ins. Co.*, 2019 WL 568926, *2 (D. Ariz. 2019) (dismissing claim for breach of the duty of good faith and fair dealing against third party administrator of insurance where there was "no contractual relationship between Plaintiff and [third party administrator]").  For similar reasons, the Court cannot see how a reformation claim could lie against Unum and Paul Revere—they are not parties to the contract that Plaintiff seeks to reform.

Plaintiff's arguments to the contrary are unavailing.  Although Plaintiff argues that "[b]reach of contract claims against an insurer as well as its agents and administrators . . . are commonplace," Plaintiff merely cites one case from the Middle District of Florida in support.  (Doc. 30 at 17 n.6.)  Plaintiff also attempts to distinguish Defendants' cited cases by arguing that they deal with "adjusters as opposed to administrators acting as agents." (*Id.*)  But several of the cases cited above do in fact deal with the actions of an agent and/or administrator of an insurer.  *See, e.g.*, *Hendrix Wholesale Supply LLC*, 2026 WL 1190918; *Ndwiga*, 2020 WL 7016448; *McGhee*, 2019 WL 1598032.  In any event, Plaintiff has not cited any Arizona authority suggesting that this distinction is meaningful.  Finally, the Court fails to see the relevance in Plaintiff's argument that "whether Paul Revere and Unum were acting as agents on behalf of New York Life is a fact question."  (Doc. 30 at 17 n.6.)  Even if Paul Revere and Unum were acting as agents, they were not parties to the underlying contract.[14]

Accordingly, Plaintiff's contract claims in Counts One, Two, Three, and Seven must be dismissed against Unum and Paul Revere.

…

---

[14]    This determination makes it unnecessary to address the parties' remaining arguments regarding Unum and Paul Revere.

b.      **New York Life**

Defendants' arguments as to why the contract-based claims against New York Life should be dismissed are essentially the same arguments the Court rejected in the October 2025 Order.

For example, Defendants argue that "the 'reasonable expectations' doctrine" applies "*only* when the policy language is unclear, ambiguous, and objectively unreasonable," and here, the Court has already "found that the Policy's definition of 'Age' . . . is not unclear [or] ambiguous." (Doc. 29 at 16-17, citation omitted.) But the Court already addressed and rejected this argument in the October 2025 Order. (Doc. 23 at 11 ["The absence of ambiguity does not end the analysis, because under the doctrine of reasonable expectations, 'Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations.'"] (quoting *Gordinier*, 742 P.2d at 283).) Other decisions are in accord. *See, e.g.*, *Cawley v. Am. Fin. Sec. Life Ins. Co.*, 2025 WL 641182, *3 (D. Ariz. 2025) ("Under the doctrine of reasonable expectations, 'Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations . . . .'") (quoting *Gordinier*, 742 P.2d 277); *Twin City Fire Ins. Co. v. DanceIt! Studio LLC*, 714 F. Supp. 3d 1143, 1149 (D. Ariz. 2024) (same); *Garrison Prop. & Cas. Co. v. Turnage*, 2022 WL 4612834, *5 (D. Ariz. 2022) ("[T]he Reasonable Expectations doctrine . . . allows a court, under limited circumstances, to refrain from enforcing unambiguous boilerplate terms of a standardized insurance agreement.").

The rest of Defendants' arguments as to New York Life are much of the same, rehashing previously rejected arguments. Thus, for the reasons set out in detail in the October 2025 Order, those arguments are once again rejected.

V.      Leave To Amend

In their motion, Defendants argue that "[b]ecause Plaintiff already had an opportunity to amend his complaint and any further amendment would be futile, such dismissal should be with prejudice." (Doc. 29 at 17.) In response, Plaintiff "respectfully

requests an opportunity to amend because amendment would not be futile." (Doc. 30 at 18.)

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Additionally, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil. Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

The only claims being dismissed from the FAC are the contract-based claims (Counts One, Two, Three, and Seven) against Unum and Paul Revere. The Court agrees with Defendants that leave to amend would be futile as to these claims because Unum and Paul Revere are not parties to the Policy.

Accordingly,

**IT IS ORDERED THAT**:

1. Defendants' motion to dismiss (Doc. 29) is **granted in part and denied in part**. Counts One, Two, Three, and Seven are dismissed as to Unum and Paul Revere.

2. Unum and Paul Revere are **dismissed** as parties.

Dated this 6th day of August, 2026.

Dominic W. Lanza
United States District Judge